## Liggett, Appellant, *v.* Shira.

*Oil lease—Forfeiture—Rentals.*

An oil lease provided that a failure to commence a test well within a specified time should render the lease null and void. "But if said party of the second part shall pay the party of the first part a monthly rental of one hundred dollars upon the said premises from and after the time above specified for the completion of said well, such payment shall operate to extend the time for completion of said well during the period for which said rental shall be paid." *Held* that the lessor was the only person who could assert a forfeiture, as the provision of the lease was for his protection and not that of the defaulting lessee.

*Equity—Written instrument—Mistake—Parol evidence.*

On a bill in equity plaintiff alleged that he entered into an agreement to operate the land of defendant for oil under a lease attached to his bill known as "Exhibit B;" that this lease had been to some extent defaced by erasures and interlineations, and the form of lease marked "Exhibit A" was filled out by his attorney to take its place, and was signed by the parties, with the understanding on the part of defendant and himself that it was in legal effect the same as the form "Exhibit B," and that he was so advised by his counsel. He further alleged that under "Exhibit B" he had a right to surrender the lease, which right was not given to him by "Exhibit A." No fraud was alleged, nor was it averred that the stipulation was omitted by mistake. One witness testified that the two leases were compared, and that the clauses providing for forfeiture were fully considered. and that all parties were agreed that under both leases the lessee had a right to surrender the lease at any time. *Held,* that proof of mutual mistake was not so clear and precise as to justify a decree reforming the lease.

Argued Nov. 10, 1893. Appeal, No. 298, Oct. T., 1893, by plaintiff, Thomas Liggett, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1892, No. 676, dismissing bill in equity against William M. Shira. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity to reform oil and gas lease.

The case was referred to S. C. McCandless, Esq., as master, who reported the facts as follows:

"The above named plaintiff and defendant, on the first day of August, 1889, entered into an agreement, by the terms of which the latter leased to the former fifty acres of land in Butler county, Pennsylvania, for the purpose and with the exclusive right to drill and operate for oil and gas. The consid-

eration to the lessor was one eighth part of the oil which might be produced, a certain sum per annum for gas sold therefrom and the use of a limited quantity of the gas on the premises. The term was twenty years from the date of said lease and as much longer as oil or gas should be found in paying quantities or the rental be paid thereon.

"The rental was provided for in the following clause, to wit: 'It is further agreed that the party of the second part shall commence a well on the above described premises, within forty-five days from the date above, or, in default thereof, pay to the party of the first part for further delay, a monthly rental of one hundred dollars on the said premises from the time above specified for commencing a well until such well shall be commenced, the said rental shall be deposited to the credit of the party of the first part at the Butler Savings Bank or be paid direct to said party. And a failure to commence such well and to prosecute the same to completion with due diligence, or to pay said rental within time specified therefor, or within ten days thereafter, shall render this lease null and void and the same can then be renewed, extended or continued in force, only by the mutual consent of the parties of both parts.'

"No well has been commenced as provided for in said agreement and the lessee has made one voluntary payment of monthly rental for delay, but since said payment the lessor has, at No. 488, March term, 1890, of the court of common pleas No. 1, of this county, recovered three hundred dollars as rentals, and another suit is pending at No. 518 September term, 1892, for additional rentals, amounting to three thousand one hundred dollars and interest.

"The result of the suit at No. 488 March term, 1890, and the decision in the cases of Galey v. Kellerman, 123 Pa. 491; Wills v. Gas Co., 130 Pa. 222; Ogden v. Hatry, 145 Pa. 640; Jones v. Gas Co., 146 Pa. 204, and the late case of Leatherman v. Oliver, 151 Pa. 646, in addition to the well established rule of law on this subject, leave no doubt that under the terms of the said contract there is, in law, no way of escape open to the plaintiff from the obligation to continue to pay the monthly rental, except to commence a well as provided for in said lease and 'prosecute the same to completion with due diligence.'

"But, as suggested in the opinion of the court in Jones v.

Gas Co., supra, referring to a popular error as to the meaning of certain words in an instrument of writing, 'If the parties so far participated in the error as to use such language when they meant something different, the instrument may be reformed in accordance with their intent.'

"The plaintiff here claims that both he and the defendant, in executing the agreement in question, mistakenly believed the legal effect and construction of the covenant of forfeiture in said lease to be that, upon the failure of the said lessee to commence a well or pay the rental within the time provided in said lease, the said lease would, ipso facto, cease and determine without any act or declaration of forfeiture by said defendant, and that the said plaintiff as well as the said defendant would thereby be discharged from all liabilities and obligations thereunder, and that the same would be equivalent to a declaration of forfeiture of said lease by defendant. The plaintiff further claims that a clause, mutually agreed upon, giving the lessee the right to drop or surrender said lease to lessor at any time he (the lessee) might see fit, and thereafter be forever discharged from all obligations and liabilities thereunder, was, by mistake, omitted therefrom, and that the defendant has since recognized the right of the plaintiff to surrender it.

"Therefore, in conformity to the suggestion in Jones v. Gas Co., before mentioned, the plaintiff files this bill for the purpose of effecting a reformation of the agreement between the defendant and himself in accordance with what he claims to have been the intention as aforesaid of both parties thereto at the time it was made, and, pursuant to such alleged intention, he prays inter alia, ' (1) that said lease be declared as surrendered on November 30, 1889, and that no rents are owing since that time ' and ' (2) that said lease may be reformed and corrected by inserting a clause, giving your orator a right to surrender said lease at any time he may see fit, and thereafter be discharged from all obligations and liabilities thereunder.'

"The defendant denies that there was any mistake on his part as to the legal effect of the clause in question, or that any clause, giving plaintiff the right to drop or surrender said lease at any time he might see fit, was mutually agreed on, or that such a clause was omitted by mistake from said lease, or that he ever recognized defendant's right to surrender the same.

" The questions of fact to be determined are: Did both the plaintiff and defendant, when they executed the lease, intend the language used in the forfeiture clause to mean that the contract could be avoided by the lessee by his withholding the rental when due; or that the lessee should have the right to surrender the said lease at his option and thereby be discharged from all liability thereunder; and was a clause giving the lessee the right to surrender said lease to the lessor mutually agreed upon, and by mistake omitted from the written instrument?

" The witnesses in this case are W. A. Schmidt, Thomas Liggett and William M. Shira. These gentlemen were the only persons present at the meeting at which the agreement was made, and, at a subsequent meeting, to which reference is made in the testimony. Mr. Schmidt is an attorney at law and the meetings above mentioned were held in his office. In this transaction he was the attorney of Mr. Liggett. It was he who brought Messrs. Liggett and Shira together, and refilled in the blank form to perfect the lease that was executed. Mr. Schmidt testifies that form ' E,' which is attached to the testimony and identified as ' Exhibit B,' was produced by Mr. Shira and first considered, and because it was somewhat defaced, and there were no more of the same form at hand, the lease agreed upon was on form ' D,' which is attached to the bill in equity and to the testimony as ' Exhibit A.'

" Although all the witnesses agree that the substitution of form ' D ' for ' E ' was made for the reason above given, nevertheless it is assumed by the plaintiff that the form of lease that was first produced and which, with immaterial exception, had been previously filled in by Mr. Shira, would, if it had been adopted as the agreement of the parties, have protected Mr. Liggett, and that the forfeiture clause therein is consonant with what the plaintiff claims to have been the intent of both parties at the time the agreement was consummated. In this aspect the said clause is material and is as follows: 'It is further agreed that the party of the second part shall commence to drill a well on the above described premises on or before September 15, 1889, a failure to commence such well within the time above specified therefor and to prosecute the same to completion with due diligence, shall render this lease null and void and without effect between the parties hereto. But if said party of the second

part shall pay to the party of the first part a monthly rental of
one hundred dollars upon the said premises from and after the
time above specified for the completion of said well, such pay-
ment shall operate to extend the time for completion (of) said
well during the period for which said rental shall be paid.'

"Notwithstanding the able argument of the learned counsel
for the plaintiff on this subject, if, as is said in the opinion of
the court in Jones v. Gas Co., supra, 'the legal effect of the
covenant is that the forfeiture is for the benefit of the lessor,
and at his option,' or, as ruled in the opinion of the court in
Leatherman v. Oliver, supra, that the clause relied upon by the
defendant ' is for the protection of the lessor and not the default-
ing lessee,' would not the obligation of the lessee to put down
a well on lessor's land under form ' E ' be fixed without power
in him to avoid it, and would not his only alternative be the
payment of the rental?   It appears so to me ; and therefore I
must conclude the fact of the consideration of form ' E ' by the
parties, before the adoption by them of the other form, does not
indicate an intention, on their part, different from that indicated
by the form of lease finally adopted.

" Mr. Schmidt testifies that the two leases were compared, and
that the clauses providing for the rental and the forfeiture in
default of its payment were fully considered, and that he, in
the presence and hearing of Mr. Shira, expressed his opinion
to Mr. Liggett that both these forms of lease gave him (Lig-
gett) the power to surrender or drop the lease at any time.
He is positive in the assertion that there was no difference of
opinion or intention with regard to this matter, but that Mr.
Shira, Mr. Liggett and he, all expressed their understanding
to be that the forfeiture clause gave the lessee the power to
terminate the lease.   All the testimony of Mr. Schmidt with
reference to what occurred at the first meeting was to this
effect.

" The testimony of Thomas Liggett is also positive with ref-
erence to the understanding expressed by all three parties that
the forfeiture clause in the form adopted gave him the right to
surrender; that he handed it (Exhibit A) to Mr. Shira, and
he (Shira) expressed himself to this effect, viz. : ' there is no
question but that it gives you the right to surrender.'   The
witness also testifies on cross-examination that Mr. Shira agreed

to give him ' that right, there that day, beyond question,' and being asked ' agreed to what,' replies ' that the failure to pay rental would wind the lease up, would end it—relieve me of my obligation to him and him to me.'

" In contradiction of these two witnesses, William M. Shira testifies with regard to the said meeting with Messrs. Liggett and Schmidt, ' I told them I would not lease on any conditions other than having the parties taking the lease on my lands to operate or pay for holding it.'   He denies that there was anything said at that interview about the right to drop the lease, and says that he has no recollection of anything being said about Mr. Liggett having the right to surrender the lease, and that he certainly did not consent to any condition of that kind ; that he has no recollection of it having been said ' that in case there was a failure to pay rentals when due that that of itself would put an end to the lease.'   He further testifies that the right of Mr. Liggett to surrender or drop the lease was not discussed in his (Shira's) presence, or agreed to by him ; that he did not, at any time, put a construction upon the meaning of the forfeiture clause in the form of lease that was finally adopted, and that Mr. Schmidt or Mr. Liggett did not, in his hearing, give a construction or make any remark as to the effect of that clause in the event of a failure to make payments when due.

" Therefore we have an unqualified contradiction by Messrs. Liggett and Schmidt on the one side, and Mr. Shira on the other side, as to what was said at that first meeting with reference to the clause in question.

" Subsequent to the said agreement, Mr. Liggett proceeded to drill a test well on the land of a party by the name of Adams, adjoining the land leased from Mr. Shira, and before it was completed, and before the time arrived for the payment of rental, Mr. Shira came to Pittsburgh at the request of Mr. Schmidt, who wrote to him at the suggestion of Mr. Liggett. The three gentlemen again met in Mr. Schmidt's office.   Mr. Schmidt does not recollect that Mr. Liggett was there, but both the other gentlemen remember that the three were there together.   The object of this meeting on the part of Messrs. Schmidt and Liggett was to induce Mr. Shira to waive the payment of the first installment of rental, or, as Mr. Shira ex-

pressed it, ' to extend the time of payment of rental or the commencement of a well,' which Mr. Shira refused to do. There were other matters talked of at this meeting, according to the recollection of these witnesses, Mr. Shira testifying that he asked Mr. Liggett to give up the lease, and told him he believed there were other parties who wanted to operate it, and that Mr. Liggett refused to give it up then. Mr. Liggett denies that such request was made, but has some recollection that Shira told him he could lease to another party.

" Mr. Schmidt says that Shira—referring to Liggett—said that ' he must pay the rental or the lease would terminate.' Mr. Liggett says—referring to Shira—' he refused to knock off the $100 rental, and insisted that if I did not do so the lease would be forfeited.' Mr. Shira says—referring to a correction he wished to have made in the lease with regard to the gas rental. clause—that Mr. Liggett said ' you can rely upon the conditions of that lease strictly, just as they are written.' I then said to him ' I will expect my rentals as they come due.' "

" It does not seem to me that the conversation at this second meeting assists, to any great extent, in revealing the intention of the parties in making their contract, but I have noticed that part of the testimony which bears upon it.

" On the 23d of October, 1889, the plaintiff paid the defendant the rental above referred to.

" The next important piece of evidence is a postal card written by defendant to plaintiff, marked ' Exhibit C ' in the testimony, upon which is written the following, viz.:

" ' BUTLER, Pa., November 29, 1889.

" ' Thomas Liggett, Esqr.: Dear sir: Have you dropped your lease on my farm in Washington township, this county. Please answer by return mail and very much oblige. W. M. SHIRA.'

" Mr. Liggett, the next day, acknowledged the receipt of said postal card and replied to it, stating that he had concluded not to carry the lease any longer, the Adams well being dry, etc., and inclosed the lease to Mr. Shira. Mr. Shira's son took the package containing the lease from the postoffice, and, at the request of his father, returned it to Mr. Liggett informing him that his father would not receive it.

" Mr. Shira's testimony, on direct examination, with reference to this postal card, is as follows, viz.: ' Q. Explain how you came

to write that postal card? A. Well I wanted to know what Mr. Liggett was going to do in regard to the lease. That is the way I undertook to find out. Q. In reply to that Mr. Liggett sent you the lease, as I understand it? A. He sent it by mail. I did not get it. Q. Who did lift it at the office? A. My son lifted it; I see by this letter that he states that he did. Q. State whether you had taken legal advice in the meantime as to what you would do in case he returned the lease? A. Yes, sir; from Mr. Farquar, attorney.'

" Mr. Shira then says that he did not agree to accept any surrender of the lease, at any time, except at the interview at which he asked for it. On cross-examination he says it was when he saw the envelopes in the box that he consulted his attorney.

" The expression used on the postal card, viz.: ' Have you dropped your lease on my farm,' etc., and his testimony that he took legal advice in the meantime as to what he would do in case the lease was returned, indicate two states of mind that are inconsistent. If, as I calculate it, the second installment of rental was then due, the language of the postal card would imply an acknowledgment of the right of Mr. Liggett to terminate the lease by the withholding of the rental. On the other hand, if such was Mr. Shira's idea, why would he hesitate to take the package containing the lease from the postoffice and why would he seek legal advice? His actions disavow the apparent meaning of the language used on the postal card. After all, we must resort to the testimony with regard to the understanding between these parties at their first meeting, which is very conflicting. There is no evidence of an omission by mistake of any clause agreed upon, in the sense that any language other than appears in said lease was intended to be used. There is no ambiguity in the language of the clause in question and it is not pretended that there was a contemporaneous or subsequent agreement.

" All the evidence goes to the intention verbally expressed by the parties in using the language set forth in the paper, and with respect thereto we have Messrs. Liggett and Schmidt on the one side, and Mr. Shira and the writing itself on the other side. The testimony of the witnesses cannot be reconciled and their veracity is not impeached."

The master—citing 1 Greenl. Ev. 296*a*; 3 Ib. 363, 372; Story, Eq. Jur. 152; Snell v. Ins. Co., 98 U. S. 85; Howland v. Blake, 97 U. S. 626; Maxwell Land-Grant Case, 121 U. S. 381; Thomas & Sons v. Loose, 114 Pa. 45; Bugger v. Chresswell, 12 Atl. R. 829; Kirk's Est., 5 Montg. Co. R. 107—found as follows:

" Guided by the authorities which I have cited, I find and report that the parol proof in this case, to the effect that both parties to the written agreement had a different intention when they executed it, from that expressed in it, opposed by the writing itself and the unqualified contradiction of the defendant, has not established that fact ' beyond reasonable certainty,' and that the proof is not of ' the clearest and most satisfactory character,' or ' entirely plain and convincing beyond reasonable controversy,' but is ' a bare preponderance which leaves the issue in doubt,' and therefore not sufficient to justify a decree reforming the written contract. I therefore recommend that the bill in equity of Thomas Liggett in this case be dismissed with costs."

Exceptions to the master's report were overruled, and a decree entered dismissing the bill.

*Errors assigned* were (1–3) that the court erred in not finding that the writing should be corrected; (4) in dismissing the bill; and (5) in not finding that the writing was executed on the faith of a parol agreement that plaintiff might surrender the lease at any time.

*West McMurray, Samuel McClay* with him, for appellant, cited: Honesdale Glass Co. v. Storms, 125 Pa. 268; Spencer v. Colt, 89 Pa. 314; Thomas v. Loose, 114 Pa. 45; Glasgow v. Chartiers Oil Co., 152 Pa. 50; Jones v. Gas Co., 146 Pa. 204; Bright. Eq. § 51.

*James Bredin*, for appellee, cited: Bright. Eq. § 51: Hunt v. Rousemaniere, 1 Pet. 8; Tilghman v. Tilghman, 1 Baldwin, 490; Galey v. Kellerman, 123 Pa. 491.

OPINION BY MR. JUSTICE WILLIAMS, December 30, 1893:

The plaintiff is seeking to reform a written agreement be-

tween himself and the defendant. He alleges that he entered into an agreement for exploring and operating the land of the defendant for oil upon the terms and conditions appearing in the form of lease attached to his bill known as " Exhibit B ; " that this lease had been to some extent defaced by erasures and interlineations, and the form of lease marked " Exhibit A " was filled out by his attorney to take its place, and was signed by the parties. He further alleges that it was so signed with the understanding on the part of the defendant and himself that it was in legal effect the same as the form " Exhibit B ; " and that he was so advised by his counsel. He now finds the lease to be different in one important particular from what he supposed the effect of " Exhibit B " to be, and for this reason he asks to reform the lease so as to make it conform to " Exhibit B."

No fraud is alleged. No stipulation was omitted by mistake. The contract was read before it was signed; and the complaint now made is that the plaintiff was mistaken in his construction of it, and that, as the court now expounds it, it is not in accordance with the understanding between the parties. This is denied by the defendant, and we concur in opinion with the learned master, that the proof of mutual mistake is not so clear and precise as to justify a decree, if the plaintiff was in other respects entitled to the relief he seeks.

But as the learned master points out, the legal effect of both forms of lease, so far as the forfeiture clause is concerned, is the same. The lessor is the only person who can assert a forfeiture. The lessee may do, or omit to do, that which the lease declares shall be a cause of forfeiture, and so subject his leasehold interest or estate to an entry and forfeiture by the lessor; but he cannot enter on himself, and declare his own estate forfeited, and so divest the rights and defeat the remedies of his lessor. A tenant of a dwelling house may forfeit his right and title under his lease by doing that which his lease names as a ground of forfeiture; but that he can by his own breach of his contract forfeit his landlord's right to the rent, is a proposition so preposterous that whoever asserts it must show a plain unambiguous agreement of the lessor to that effect. In form " B " the lessor had a right of forfeiture which he might exercise or not. The lessee could prevent its exercise by payment but he could not compel its exercise by nonpayment.

The learned auditor and the court below were right on both questions considered. The proofs did not come up to the standard required by a court of equity. If the proofs had been sufficient to reform the lease so as to make it conform to the original draft, "Exhibit B," still the legal effect of the lease would be unchanged.

The decree is affirmed at the cost of the plaintiff.

Cf. McMillan v. Pa. Co., above, page 142, and Cochran v. Pew, above, page 184.