GRIEB v. EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES

(Circuit Court, E. D. Pennsylvania. June 26, 1911.)

No. 379.

1. REFORMATION OF INSTRUMENTS (§§ 19, 20*)—GROUNDS—MUTUAL MISTAKE.
Reformation of a contract will not be granted by equity unless there has been a mutual mistake, but where there has been a mistake of one party, accompanied by fraud of the adverse party, the instrument may be made to conform to the agreement according to the intention of the parties.
[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78, 79–80; Dec. Dig. §§ 19, 20.*
Reformation of instrument as dependent on mutuality of mistake, see note to American Ass'n v. Williams, 93 C. C. A. 10.]

2. REFORMATION OF INSTRUMENTS (§ 36*)—PLEADING—BILL—SUFFICIENCY.
A bill to reform a $10,000 tontine life policy, binding insurer for an annual premium for 20 years to pay $10,000 on insured's death within the 20 years, and to pay insured, if living at the expiration of that period, $10,000 with surplus equivalent to the full proportionate share of the profits of insurer's business earned by the policy, or at the option of insured to issue a paid-up policy, or to issue a life annuity, which alleges that insurer induced insured to accept the policy and to pay the premiums by fraudulent representations that by experience of insurer, and with like experience in the future, the policy would entitle insured at the maturity thereof to an option of $17,570 in cash, or a paid-up policy of $37,600, or a life annuity of $1,400, and that the policy would yield such results unless variations in current rates of interest, in mortality, lapsing, or other variable quantities, would prevent insurer from having the same experience in the future, that the representations were made to insured by insurer's authorized agent orally and by printed

blanks attached to the policy, stipulating that insured at the tontine period had three methods of settlement as shown by the representations, does not state a cause of action, since the contract of insurance, as evidenced by the policy issued, is in accordance with the intention of the parties as disclosed by the allegations of the bill.

[Ed. Note.—For other cases, see Reformation of Instruments, Dec. Dig. § 36.*]

**3. ACCOUNT (§ 12*)—ADEQUACY OF REMEDY AT LAW.**

A bill for discovery and accounting, which alleges that a policy issued by defendant on complainant's life requires defendant to pay a specified sum, with a dividend, equivalent to the full proportionate share and profits of defendant's business earned by the policy, and which avers that complainant was assured that the past experience of defendant would entitle him to a specified sum, shows that complainant has an adequate remedy at law, on the theory that defendant is bound by the representations, and in an action at law complainant need only prove the fact that there has been no difference in condition since the execution of the policy from those existing prior thereto, and he may compel, under Rev. St. § 724 (U. S. Comp. St. 1901, p. 583) a production of defendant's books on that question.

[Ed. Note.—For other cases, see Account, Cent. Dig. § 65; Dec. Dig. § 12.*]

**4. REFORMATION OF INSTRUMENTS (§ 25*)—SCOPE OF REMEDY.**

A court will not reform an instrument where the legal construction of the instrument as reformed will be the same as before reformation, and the court will not reform a tontine life policy where, if reformed, the rights of the parties would not be changed.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 84–90; Dec. Dig. § 25.*]

**5. ACCOUNT (§ 17*)—DISCOVERY—PLEADING.**

Where a bill seeks both discovery and an accounting, the discovery is deemed incidental to the accounting, and where there is no right to an accounting, the bill is bad on demurrer, especially where plaintiff has an adequate remedy at law, and may, under Rev. St. § 724 (U. S. Comp. St. 1901, p. 583), compel the production of defendant's books to disclose the facts.

[Ed. Note.—For other cases, see Account, Dec. Dig. § 17.*]

In Equity. Suit by Harry Grieb against the Equitable Life Assurance Society of the United States. Demurrer to bill sustained.

Henry P. Erdman and Preston K. Erdman, for complainant.

George Douglas Hay, B. Gordon Bromley, and Thomas De Witt Cuyler, for respondent.

HOLLAND, District Judge. To this bill in equity, praying for a reformation of a life insurance policy and a discovery and accounting by the defendant, a demurrer has been filed denying the right of complainant to a reformation, and raising the question of the court's jurisdiction to order the latter. There are numerous other questions raised by the demurrant, but it will be necessary to consider only those mentioned.

The defendant is in possession of the policy as collateral for a loan, and this was made an excuse by the complainant for not having attached a copy to his bill. It is, however, alleged that the date of the policy is June 7, 1889, and that it is known in the insurance business as a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tontine policy, of the face amount of $10,000, according to the terms of which, in consideration of the payment by the complainant of an annual premium of $494, for the period of 20 years, defendant agreed to pay the sum of $10,000 to the executors of the complainant, in case of his death within the period of 20 years from the date of the policy, and in case the insured should be living at the expiration of that period, to pay to him the sum of $10,000, together with the further sum, denominated as dividend or surplus, equivalent to the full proportionate share of the profits of the defendant's business earned by this policy, or else, at the option of the complainant, to issue to him a certain paid-up policy of insurance, payable at death, or as a further option, to issue to him a certain life annuity.

It is further averred that the complainant was induced to accept the said policy and to pay the stipulated premiums by certain false and fraudulent representations made to him by defendant, to the effect that the experience of the defendant with similar policies issued by it was such that with like experience in the future, the complainant's policy would entitle him, at the maturity thereof, according to its terms, to an option of $17,570 in cash, or a paid-up policy, payable at death, of $37,600, or a life annuity of $1,400, and that the policy would yield these results to the complainant, unless variations in current rates of interest, in mortality, lapsing, or other variable quantities, would prevent the defendant from having the same experience in the future that it had with similar policies which had expired or which had then run for a period of 18 years; and that these representations were made to the complainant by the defendant's authorized agent, communicated to him orally, and by a printed blank which was attached to the insurance policy, a copy of which is made part of this bill, in which we find the statement, "the policy holder has at the tontine period a chance of three methods of settlement, shown in the following illustration; based on the actual results of tontine policies issued in the past. The results of policies issued hereafter will, of course, depend upon the future experience of the society." Then follow the three methods of settlement, to wit, (1) cash value $17,570; (2) paid-up value policy, payable at death, $37,600; (3) life annuity $1,400.

On March 18, 1909 defendant notified the complainant that at the maturity of his policy on June 7, 1909, if then in force, it would settle with him therefor as follows: It would give to him an option (1) in cash $12,194.80; or (2) a paid-up policy of $24,500; or (3) a life annuity of $774.96—with the statement that this was all the complainant was entitled to receive.

The complainant insists that, by reason of the matters and things alleged in his bill, he is entitled to an accounting of the earning of his policy of insurance, and that the same is too complicated to be settled in an action at law, and to a discovery of the defendant's experience with similar policies at the time it presented to the complainant the illustration blank, and particularly, the results of its business in the year 1888, and to have the policy of insurance reformed and payment made in accordance with the terms thereof as reformed, and that the policy be produced by the defendant in court.

The following is the prayer for reformation:

"That the said policy of insurance No. 429,539, issued by the defendant to your orator, be reformed so that it shall read that your orator should be entitled at the maturity of the said policy, if then living, at his option, to a cash value, consisting of matured endowment and surplus of $17,570, less such sum, if any, as defendant can show was caused by variation in rate of interest, maturity, value of investments, or other variable quantity, during the term of the policy, from the same quantities prevailing immediately previous to the date of said policy, and that the defendant be ordered to make payment to your orator in accordance with the policy so reformed."

[1] Is the complainant, upon the averments of his bill, entitled to the reformation prayed for? Reformation of a contract will not be granted by a court of equity unless there has been a mistake which is mutual and common to both parties to the instrument. It must appear that both have done what neither intended. A mistake on one side may be a ground for rescission, but not for reforming a contract. Where there has been a mistake of one party, accompanied by fraud or inequitable conduct of the remaining parties, in such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties. Pomeroy's Equity Jurisprudence, §§ 1375, 1376 and notes; Hearne v. Marine Insurance Co., 87 U. S. 488, 22 L. Ed. 395; Simmons & Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Boyce v. Fire Insurance Co., 24 Pa. Super. Ct. R. 589.

[2] The contract of insurance, as stated by the plaintiff's bill, is, in our judgment, in accordance with the intention of the parties. The insurance company stated, through its agent and by its illustration blank attached to the policy, that a policy holder was entitled, at the end of the tontine period, to the advantages of three methods of settlement, based on the actual results of tontine policies issued in the past, and one of these advantages of settlement was cash value, consisting of matured endowments and surplus amounting to $17,570, but it is added, and so stated in the plaintiff's bill, that "the results of policies issued hereafter will of course depend upon the future experience of the society"; that is to say, that it was represented by the defendant that up to the time of issuing the policy to the complainant the experience of the society from policies of this kind issued in the past was such that the complainant would be entitled to a cash value consisting of matured endowments and surplus amounting to $17,570, but that thereafter (i. e., after the date of complainant's policy) the cash value of such policies would "depend upon the future experience of the society." So that it seems to me that the policy, with the stipulation above referred to, as set forth in the plaintiff's bill, is in accord with the intention of the parties, and a court of equity is not warranted in making a new contract under the guise of a reformation.

[3] The bill alleges the contract of insurance requires defendant "to pay your orator the sum of $10,000, together with a further sum, denominated as dividend or surplus, equivalent to the full proportionate share and profits of the defendant's said business earned by its policy," etc. The plaintiff was assured that the past experience of the company would entitle him to $17,570, and this assurance was conveyed to him,

according to the averments of the bill, verbally by their agent, and by a written illustration blank filed as part of the contract.

The defendant is bound by that representation, and would be estopped from denying that its past experience was otherwise than that it would entitle the plaintiff to $17,570, so that the plaintiff has a complete remedy at law for the balance due him on his contract, which, according to the allegations in his bill, is the difference between what he already received and $17,570, and in such a suit, it seems to me, the plaintiff would only be required to establish the fact that there was no difference in condition since the execution of the complainant's policy from those existing prior thereto, and if he is entitled to this information from the defendant company, he has ample authority under section 724 of the Revised Statutes (U. S. Comp. St. 1901, p. 583) to compel a production of all its books and papers on this point.

[4] It has also been held that a court will not reform an instrument merely for the sake of reforming it, and it is a good defense to point out whether on demurrer or by answer that the reformation would be useless and of no effect. 34 Cyc. 946. Where the legal construction put on the instrument would be the same as before reformation, there is no necessity for a court of equity to take action. Thompson v. Phœnix Insurance Co. (C. C.) 25 Fed. 296–298; Liggett v. Shira, 159 Pa. 350, 28 Atl. 218.

If the policy be reformed as prayed for, the complainant's rights would not be altered. According to the averments in his bill he is entitled to recover the $17,570 in cash, unless variations in current rates of interest, in mortality, lapsing, or other variable qualities prevented the same experience in the future that the society had with similar policies that had run for 18 years at the time of the issuing the policy to the complainant.

If the contract be reformed in accordance with the prayer of the bill, the right of the complainant to recover would not be altered. The maximum amount would be no more than $17,570, subject to any reductions which might occur as a result of dissimilar experiences by the society during the running of the policy, so that the plaintiff, by his averments in the bill, shows that he is not entitled to a reformation of the contract, because (1) it at present represents what the parties originally intended; and (2) that if reformed, the rights of the parties would not be altered. For these reasons, the demurrer as to the reformation is sustained.

[5] There is also a prayer in the bill for a discovery and an accounting, upon the ground that the society had failed to apportion to the complainant his policy's entire share of the surplus.

In a case on all fours with the one at bar, Judge Buffington, in Everson v. Equitable Life Assurance Society (C. C.) 68 Fed. 258, affirmed by the Circuit Court of Appeals, 71 Fed. 570, 18 C. C. A. 251, held that the relation between the holder of a matured semitontine policy and the insurance company is that of debtor and creditor merely, and involves no trust relation; and a policy holder who is dissatisfied with the amount of the surplus which is apportioned to him by the company, pursuant to the terms of the policy, cannot maintain a bill

for accounting and discovery when there are no sufficient allegations of fraud. Where a bill seeks both discovery and an accounting, the discovery must be regarded, prima facie, as incidental to the accounting, and, if there is no right to an accounting, the bill will be held bad upon demurrer. And this, it seems to me, is no hardship, because we think the plaintiff has an adequate remedy at law to recover the amount to which he may be entitled under his contract, and as pointed out in Street's Federal Equity Practice, §§ 1860, 1861, and 1862, the complainant, under the provisions of section 724 of the Revised Statutes, may compel the production of books and papers and all documents necessary for the plaintiff's case without being hampered by the existence of a procedural rule drawn from the practice in English Chancery in regard to the production of documents upon bills of discovery.

The demurrer, denying plaintiff's right to a reformation and also to the jurisdiction of the court to compel a discovery and accounting, is sustained.