## In re MILLER BROS. GROCERY CO.

### (Circuit Court of Appeals, Sixth Circuit.   February 2, 1915.)

### No. 2519.

BANKRUPTCY ⬠316—PROVABLE CLAIMS—RENT OF PERSONAL PROPERTY.

Under a lease of a store cash carrier system for 7 years at a rental payable quarterly, which provided that if any installment of rental should remain unpaid for 60 days after it became due the entire rental to the end of the lease should at once become payable without demand, and that in case the lessee became bankrupt the balance of the rental for the entire term should be considered at once due and payable without notice or demand, and that the lessor might at any time thereafter enter the premises and take possession of the system, and thereby terminate all rights and interest of the lessee, the lessor could either take possession of the system on default by the lessee or have the benefit of the accelerated maturity of the rents, but was not entitled to the benefit of both provisions, and by taking possession of the system it lost its right to future rents, and though the lessee was in default for more than 60 days prior to bankruptcy, the subsequent taking possession by it of the system required its claim for future rents to be disallowed.

[Ed. Note.—For other cases, see Bankruptcy, Cent.' Dig. §§ 474–477; Dec. Dig. ⬠316.]

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

In the matter of the Miller Bros. Grocery Company, bankrupt. From an order (208 Fed. 573), reversing an order of the referee and allowing in full the claim of the Lamson Company, the trustee appeals. Reversed, and order of the referee affirmed.

E. M. Flowers and L. B. Hall, both of Toledo, Ohio, for appellant. Fritsche, Kruse & Winchester, of Toledo, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge.   The Miller Bros. Grocery Company and the Lamson Consolidated Store Service Company on November 15, 1911, executed a contract, in terms a lease, under which the Store Service Company installed a cable cash carrier system in the store of the Grocery Company in Toledo, Ohio, and on December 14, 1911, the work of installing the carrier system was completed. The lessee was to use the system on its premises for 7 years from date of installation, and for as many successive years thereafter as it might elect to extend the lease; but the lessor reserved the right to terminate the lease at any time after 7 years, upon giving 60 days' written notice. The lessee was to pay rental quarterly in advance on the 1st days of March, June, September, and December in each year at the rate of $250 per annum, subject to a credit of $100 (for an old carrier system turned over to the lessor), which was to be deducted in sums of $25 from each of the first four quarterly installments of rent. January 19, 1912, the lessee paid the rental for the time between date of installa-

tion and March 1st; on that date the first quarterly installment of $62.50, less $25 on account of the old carrier system—that is, a balance of $37.50—became payable (in advance); but that sum was not paid, nor has anything further been paid on account of rent. May 16th following an involuntary petition in bankruptcy was filed against the Grocery Company. July 8th the company was adjudicated a bankrupt, and August 10th the trustee was elected. The Lamson Company meanwhile succeeded in title and interest to the rights of the Lamson Consolidated Store Service Company, and on August 26th filed its proof of claim for $1,618.35, which was made up as follows: The total rental for seven years $1,750, less the rental paid January 19th, and the $100 for the old carrier system; but, before filing its claim, the Lamson Company in that month took possession of the new carrier system and removed it to its factory in Lowell, Mass. The referee allowed $37.50, which amount was fixed as above pointed out; and upon review the court below reversed the order of the referee and allowed the entire claim. This occurred July 5, 1913, and on the same date the trustee was allowed an appeal.

The question is whether the Lamson Company was entitled both to take back the carrier system and insist upon allowance of its entire claim. The lease does not in express terms authorize this to be done. It is urged, however, that reasonable interpretation warrants such a result. The lease provides:

Paragraph 3: "* * * If any installment of rental shall remain unpaid for sixty days after it becomes due. the entire rental to the end of this lease shall become at once payable without demand."

Paragraph 6: "And these presents are upon this condition, that in case of a breach by lessee of any of the covenants or agreements herein, or in case the lessee becomes bankrupt, insolvent, or makes an assignment for the benefit of creditors, or discontinues business in the premises for any other reason whatsoever, the balance of rental for the entire term of this lease shall be considered at once due and payable without notice or demand on the part of the lessor; and it is also provided that the lessor may, at any time after such a breach of this lease occurs, enter the premises, take possession of said system, and thereby terminate all rights and interest of the lessee in said system."

It is to be observed that upon the happening of events described in this language two distinct advantages in terms arise in favor of the lessor: One is the acceleration of the maturity of future rents, and the other the right to take possession of the carrier system and so terminate the lease. Still it is further to be observed that the lessor is not in terms given the right to take possession of the carrier system and at the same time enforce payment of the rents so matured. According to the true intent of the lease, as it seems to us, the lessor is entitled to the benefit of either the accelerated maturity of rents or the possession of the carrier system, but not of both. The claim that the intention was to give to the lessor both advantages overlooks the fact that this would take from the lessee the only consideration it could ever receive for its obligation to pay rent at all—its possession and use of the carrier system; and, further, in spite of maturing future rents in the manner pointed out, all possibility of ever earning such

rents, and of so giving any consideration therefor, would be removed by the lessor's act. Surely, if we say the least of it, to justify such a result as this, language of the most explicit character should be employed; and we find no provision expressly fixing liability upon the lessee to pay rents which in the nature of things could not be earned after re-entry of the lessor.

It is true the lessor insists that this particular carrier system was practically worthless at the time it was taken away; but upon this theory it is difficult to see, and it is not explained, why the lessor took it back. The system was in use only about five months prior to the bankruptcy. The lease required the lessor at its own expense to supply all parts necessary to keep the system in proper repair, excepting where the defect was caused by carelessness of the lessee and where the rental was overdue, and required the lessee at the expiration of the term to return the system in as good order and condition as it was at the date of the lease, "reasonable use and wear thereof excepted." It is therefore plain that the parties expected the system to endure at least seven years. The lessor called its foreman to show the condition of the carrier system at the time it was received at its factory. He described the system, as then dismantled, in detail; and it must be said that it comprised many parts, such as stations, station stands, tracks, brackets, flanges, cash boxes, drive wheels, shaftings, and the like. He said the steel parts were covered with rust and other parts were tarnished. He seemed at first to think the system had been "junked"; but he qualified this later by a statement that shaftings, hangers, and couplings were to be rebabbitted, polished, etc., and, while it was in substance said that adjusting such a system to a particular store, as here, would materially lessen its value for any other store, we are not convinced that a system composed almost entirely of metal and used only five months could not be utilized elsewhere to material advantage.[1]

It results that the lessor's theory savors of forfeiture of substantial rights of the lessee, and it need not be said that forfeitures are not favored. It is conceded that, if the subject of the lease were real estate, re-entry of the lessor would put an end to the lessee's liability to pay unearned rent; and it ought to follow that, if the instrument in issue is to be treated as a lease, a like conclusion should be reached here. The decision of the court below, as we understand it, considers the provability of the lessor's claim for rent (under the Bankruptcy Act) as the test of the right to have it allowed; the theory being that, since the March installment of rent was in default for more than 60 days prior to the bankruptcy, the rent for the entire term of the lease had matured "without demand" and become "a fixed liability * * * absolutely owing" at the time of the filing of the petition (section 63a1), and so the lessee's liability was not regarded as affected by the lessor's

[1] It is worthy of notice that the Lamson Consolidated Store Service Company, the original lessor of this system, made no such claim, as is here urged, in respect of one of its carrier systems which had been in use almost a year and which was in issue in Re Merwin & Willoughby Co. (D. C.) 206 Fed. 117, 118, 122.

act of retaking the carrier system.   (D. C.) 208 Fed. 573, 575, 576. This places too much stress upon the provision for maturing rent without demand, and fails to observe the real significance of the lessor's re-entry; indeed, it was believed that the waiver of demand for payment of rent under the present lease distinguished the instant case from that of Lamson Consol. Store Service Co. v. Bowland, 114 Fed. 639, 52 C. C. A. 335 (C. C. A. 6th Cir.).

We regard this as error; for we think the present case is ruled by the decision in that case.   True, the lease involved in that case did not in express terms provide for accelerating the maturity of future rents without demand, and one of the reasons assigned in the opinion was that no demand had been made; but that was not the only or controlling reason.   The lessor there was distinctly authorized, in the event of breach of covenant or in case of bankruptcy or insolvency, to enter upon the store premises *without notice or demand,* and take possession of the carrier system, and thereby determine all right and interest therein of the lessee.   Bankruptcy ensued, the lessor entered the store premises and took possession of the carrier system, but its claim for future rents was disallowed.   It was the effect upon the lessee's liability for future rent, which the court there ascribed to the lessor's resumption of possession of the carrier system, that is important here.   That the effect was to release the lessee from such liability is traceable throughout the opinion; it was only in the event that possession had been taken upon some ground which kept the lease alive that re-entry would not be regarded as fatal.   It is not shown in the instant case that possession was taken with any idea of keeping the lease alive; and since it was the act of the lessor here, as it was there, which put an end to the lease, we do not see how precipitating the maturity of future rents here gives rise to any material distinction between the two cases; for when the lessor here, like the lessor there, resumed possession of the system and terminated the lease, it destroyed its power, as already stated to earn future rents, whether their maturity had been precipitated or not, and thereby obviously subjected its claim to the defense of failure of consideration.   And this defense is as clearly open to the trustee in bankruptcy as it would have been to the lessee if bankruptcy had not intervened.

The order of the court below must be reversed, and, since the quarter's rent allowed by the referee was payable in advance, and was substantially earned before the bankruptcy, the order of the referee is affirmed, with costs.