**DORRANCE et al. v. LEHIGH VALLEY COAL. CO.**

No. 3388.

District Court, M. D. Pennsylvania.
Jan. 9, 1936.

R. W. Rymer and Kelly, Balentine, Fitzgerald & Kelly, all of Scranton, Pa., for plaintiffs.

P. F. O'Neill, of Wilkes Barre, Pa., and O'Malley, Hill, Harris & Harris, of Scranton, Pa., for defendant.

WATSON, District Judge.

By various agreements the Temple Coal Company became the lessor and the Lehigh Valley Coal Company the lessee of a certain anthracite mine known as the Babylon. This action is by the receivers of the Temple Coal Company to recover $75,000 from the Lehigh Valley Coal Company for failure of the latter to pay royalties on coal mined in the Babylon mine and for lack of diligence in mining. The defendant answered and claimed a set-off and counterclaim, to which the plaintiffs filed a reply. By agreement, the case was tried before the court without a jury upon stipulation of facts.

In its answer the defendant denied the claim for lack of diligence in mining. Since the plaintiffs did not attempt to prove the claim at the trial or stipulate concerning it, this claim must be considered as waived or renounced.

It was stipulated that the defendant mined 8,206.07 tons of coal from the Babylon mine, valued at $2,516.07. The defendant admitted that it failed to make cash payments therefor to the plaintiffs, but contends by virtue of its set-off and counterclaim that the plaintiffs owe to the defendant in excess of $110,424.54, on which amount the defendant gave credit to the plaintiffs for $2,516.07.

The facts relating to defendant's set-off and counterclaim are briefly here set forth. By virtue of certain agreements, the defendant, Lehigh Valley Coal Company, became the lessor and the Temple Coal Company became the lessee of what is known as the Harry E. and Forty-Fort Colliery property. Under the terms of said lease and for failure of the lessee to keep its covenants, the defendant, on March 30, 1932, caused it to be forfeited and resumed possession of the leased property, together with all the improvements, fixtures, machinery, etc., and seized all of the personal property found upon the premises. At the time of forfeiture there was due and owing under the lease, on account of minimum royalties, the sum of $15,050 (being $6,227.58 accruing prior to appointment of the receivers of the Temple Coal Company on February 7, 1932, and $8,822.42 accruing during the possession of the receivers to April 1, 1932); and $95,374.54 owing under the lease on account of taxes which were subsequently paid by the defendant (being $87,609.75 accruing prior to February 7, 1932, and $7,764.79 during the possession of the receivers). Thus defendant's set-off and counterclaim on account of minimum royalties and taxes is $110,424.54, without interest computed.

The plaintiffs claim by way of reply to the defendant's set-off that the defendant should not be allowed the benefit of its claim of $110,424.54, for the reason that when the Harry E. and Forty-Fort lease was forfeited for breach of condition and default, the defendant was unjustly enriched by taking possession of the improvements, etc., valued at $825,792.84, placed on the leased premises by plaintiffs, and forfeited under the lease; by retaining minimum royalties in the amount of $212,859.52, which was paid by the Temple Coal Company and the plaintiffs to the defendant, and for which plaintiffs could have taken credit against coal mined in the future, had the lease not been forfeited.

The first issue arises out of plaintiffs' claim for defendant's nonpayment of royalties for coal mined from April 1, 1933, to July 1, 1933, under the Babylon lease. It is stipulated that the sum owing to the plaintiffs is $2,516.07. The defendant admits the debt and that it has not been paid in cash. This undisputed claim can, therefore, be passed without discussion.

The second issue arises out of defendant's set-off and counterclaim for unpaid rent and taxes due from plaintiffs to the defendant under the Harry E. and Forty-Fort lease. It is stipulated and, therefore, not questioned that the said Harry E. and Forty-Fort lease was forfeited and that there were taxes and minimum royalties in the amount of $110,424.54 unpaid at the time of forfeiture. The Harry E. and Forty-Fort lease provides for payment of minimum royalties and taxes by the lessees and further provides as follows: " * * * It being understood and agreed, that no determination of this lease or taking or recovering possession of the said premises shall deprive the lessor of any action or remedy against the lessees for any damages for breach of any covenant, promise or agreement entered into or made, or for any rent or sums of money that may be due and unpaid. * * * "

Independent of any specific provisions in the lease, the authorities hold that the landlord's right to accrued rents and taxes is not affected by his forfeiting the lease for nonpayment thereof. 16 R.C.L. 1137, 1138, § 658; In re Miller Bros. Grocery Co. (C.C.A.) 219 F. 851, L.R.A. 1916B, 1101, Ann.Cas. 1916A, 946; Trickett, Landlord and Tenant (1904) 763; Liggett v. Shira, 159 Pa. 350, 359, 28 A. 218; Greco v. Woodlawn Furniture Co., 99 Pa.Super. 290, 292; American Bonding Co. of Baltimore v. Pueblo Inv. Co. (C.C.A.) 150 F. 17, 30, 9 L.R.A.(N.S.) 557, 10 Ann.Cas. 357; Bohning v. Caldwell (C.C.A.) 36 F.(2d) 222. Several quite similar cases involving royalties and taxes under coal leases are Potter v. Gilbert, 177 Pa. 159, 35 A. 597, 35 L.R.A. 580, Bohning et al. v. Caldwell (C.C.A.) 36 F.(2d) 222, and Williams Pocahontas Coal Co. v. Berwind Land Co. (C.C.A.) 76 F.(2d) 319.

The third issue arises out of plaintiffs' reply, in the nature of a set-off, for the retention by the defendant of minimum royalties for which plaintiffs had not mined coal, and for unjust enrichment by the defendant in taking possession of improvements, personal property, etc., placed by plaintiffs on the leased property.

The lease between the Lehigh Coal Company and the Temple Coal Company provided for the payment of minimum royalties, whether coal was mined or not,

"and if in any quarter or year during the continuance of the term of this lease the said lessees shall have mined a less number of tons of coal than is sufficient * * * to make up the quarterly minimum rental as aforesaid, the lessees may in any future year or years mine and remove sufficient coal * * *, to reimburse themselves for the coal so paid for, and not mined and removed, without further payment therefor." The said lease further provided that if the lessees shall violate any of the covenants of the lease, then the "lease and the privileges shall cease and determine and become void, and the lessor may enter upon the premises occupied by the lessees under this lease and seize and take possession for its own use of the said premises, and of all breakers and other improvements, buildings, miners houses, fixtures, machinery and engines and of all personal property of every description found thereon, as its own property, anything herein contained to the contrary thereof notwithstanding, * * * it being understood and agreed, that no determination of this lease or taking or recovering possession of the said premises shall deprive the lessor of any action or remedy against the lessees for any damages for breach of any covenant, promise or agreement by the said lessees in this agreement entered into or made, or for any rent or sums of money that may be due and unpaid, and that the remedies in this clause and in clause thirteen hereof specified, shall not be construed to be exclusive of any other remedies the lessor may have at law or in equity."

It is stipulated that the defendant, the lessor, declared the lease to be forfeited and took possession of the leased premises, together with all the improvements, fixtures, and personal property placed upon the leased premises by the Temple Coal Company, the value of which was $825,792.84, the value of the personal property alone being $151,921.58. No question is raised as to the propriety of the forfeiture. Thus, under the plain terms of the lease, all privileges of the lessee ceased. The lessor had no further right to mine coal to make up for any deficiency in tonnage on account of minimum royalties. The lessor had the right to retain the minimum royalties paid to it, and the lessee cannot recover them back. Williams Pocahontas Coal Co. v. Berwind Land Co. (C.C.A.) 76 F.(2d) 319; Schoen et al. v. New Britain Trust Co., 111 Conn. 466, 150 A. 696; Galbraith v. Wood, 124 Minn. 210, 144 N.W. 945, 50 L.R.A.(N.S.) 1034, Ann.Cas. 1915B, 609.

Under the law and the terms of the lease, the lessor had the right to seize and take possession for its own use of the premises and of the improvements and fixtures found thereon. The Supreme Court of the United States in Kutter v. Smith, 2 Wall. (69 U.S.) 491, 497, 17 L.Ed. 830, said: "The doctrine concerning this class of fixtures, which is a strong innovation upon the common law rule that all buildings become a part of the freehold as soon as they are placed upon the soil, has extended no further than the right of removal while the tenant is in possession; and has never been held to give a right of action against the landlord for their value." In Davis v. Moss, 38 Pa. 346, it was held by the Supreme Court of Pennsylvania that "a tenant may remove from demised premises, fixtures erected by him thereon for the benefit of his trade or business, if the removal be made during the term; after the term they become part of the realty, and are not severable." Where this question has arisen in other jurisdictions, the courts have generally held that after forfeiture of the lease in the absence of express agreement to the contrary, the tenant has no claim against the landlord for the value of the improvements. The following statement is found in 16 R.C.L. § 290, at page 794: "In the absence of any agreement between the parties there is no obligation on the part of the lessor to pay the lessee for improvements erected by the latter upon the demised premises, though the improvements are such that by reason of their annexation to the freehold they become a part of the realty and cannot be removed by the lessee."

The remaining question is whether the defendant had the right to seize and retain possession of the personal property upon the premises at the time of forfeiture, the value of which was $151,921.58, and, at the same time, enforce its claim for rent and taxes due and unpaid at the time of forfeiture which amounted to $110,424.54.

Prior to the forfeiture, the personal property belonged to the plaintiffs subject to the landlord's claim for rent. The

lease gave to the lessor the right to seize and take possession of the personal property found upon the premises at the time of the forfeiture, and this the lessor elected to do. The lease provided that, on the determination of the lease or retaking of or recovering possession of the premises, the lessor should not be deprived of any action or remedy against the lessee for any damages for breach of any covenant or for any rent or sums of money due and unpaid. The personal property was no part of the premises. "Premises" does not include, and is never used to designate, personal property. It is used both in law and in common speech to indicate land and tenements. The lease contained no provision that, on seizing the personal property, the lessor should also have the right to collect rents or sums of money due at the time of the seizure. In this case, the value of the personal property seized was far in excess of the amount of the rent and taxes due and unpaid at the time of the seizure. The defendant seized and retained the personal property, and, thereafter, there was nothing due from the plaintiffs to the defendant.

If, as contended by the defendant, the agreement was that the lessor should be permitted to seize and retain for its own use all the personal property found upon the premises at the time of the forfeiture, and also collect from the lessee all amounts due from the lessee to the lessor at the time of the forfeiture, then the provision was a penalty, and courts will permit a recovery only for the actual loss, if any sustained.

It has not been alleged or shown that the defendant suffered any loss or damages as a result of the failure of the plaintiffs to comply with the terms of the lease of the Harry E. and Forty-Fort Colliery. On the contrary, the evidence clearly shows that the retaking of the leased premises, and the seizure of the personal property by the defendant resulted in great enrichment to the defendant.

It is a fundamental principle of the law of damages that no party can recover damages from another unless he has in fact suffered a real loss or been damaged. As is said in 8 R.C.L. 421: "To warrant the recovery of damages in any case, there must be a right of action for a wrong inflicted by the Defendant, and damage resulting to the Plaintiff therefrom." A provision in a contract providing for a recovery of damages for any sum of money which is out of proportion to the actual loss will not be enforced by the courts, as it is considered a penalty, and in such case the courts will only permit a recovery for the actual loss, if any, sustained. In 8 R.C.L. page 565, the principle is thus tersely stated: "In determining whether the amount stipulated for is to be regarded as a penalty or as liquidated damages, the court will generally take into consideration its reasonableness, that is, whether it bears some reasonable proportion to the loss actually suffered; and if the sum named is not disproportionate to the damage that might probably result from a breach of the contract, the stipulation will be regarded as one for liquidated damages, unless the real intention of the parties, under the recognized rules, shows it to be a penalty. If, however, the sum stipulated is so large as to be out of all proportion to the probable or presumptive loss, and is, therefore, not a fair measure of the damage actually sustained, it will generally be regarded as a penalty, especially where the actual damage resulting from the breach may be readily ascertained."

In the Restatement of the Law of Contracts, as adopted and promulgated by the American Law Institute, § 339, the following comment is made: "Punishment of a promisor for breach, without regard to the extent of the harm that he has caused, is an unjust and unnecessary remedy."

An interpretation of the Harry E. and Forty-Fort Colliery lease, which would permit the defendant to recover from the plaintiffs any amount of the unpaid rent and taxes, and, at the same time, retain for its own use the personal property seized, would be unfair, inequitable, and, in my opinion, not the intention of the parties.

Now, judgment is directed to be entered in favor of the plaintiffs, Charles Dorrance and C. R. Bedford, receivers of the Temple Coal Company, and against the defendant, the Lehigh Valley Coal Company, for the sum of $2,516.07, with interest from July 20, 1933.