**LAMSON CO. v. ELLIOTT–TAYLOR–WOOL-FENDEN CO. et al.**

Circuit Court of Appeals, Sixth Circuit.
April 3, 1928.

No. 4785.

**1. Bailment ☞22—Contract held to give "owner" of parcel carriage system, installed in "user's" store, cumulative right to retake it on contingency specified and to mature future payments.**

Contract for installation by "owner" of parcel carrying system in "user's" store, requiring owner to keep system in repair for term of ten years, user to pay for cost of installing or continuing system by specified quarterly payments, and further providing that, in case of user's breach of agreement, bankruptcy, insolvency, or appointment of receiver of its business, all payments to end of agreement should at once become due without demand "and, in addition thereto," authorizing owner to retake system, *held* to give owner benefit of both provisions for retaking system and maturing payments cumulatively and not in alternative.

**2. Damages ☞80(3)—Contract authorizing "owner" to retake parcel carrier system installed in "user's" store and precipitate future payments, held valid as against contention that it involved penalty or forfeiture.**

Contract for installation by "owner" of parcel carrying system in "user's" store, requiring owner to keep system in repair for term of ten years, system to be returned at end of agreement, user to pay for the cost of installing or continuing system by specified quarterly payments, and further providing that, in case of user's breach of agreement, bankruptcy, insolvency, or appointment of receiver of its business, all payments to end of agreement should at once become due without demand "and in addition thereto" authorizing owner to retake system, *held* valid, as against contention that, because it permitted owner both to retake it for user's default and precipitate future payments, it was invalid as involving penalty or forfeiture.

**3. Damages ☞85—Agreement for liquidated damages proportionate to extent of default will be enforced.**

When competent parties dealing as strangers provide for stated damages on default, and the damages are made proportionate to the extent of the default and probably approximate actual damages, contract will be enforced.

Appeal from the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Petition for reclamation by the Lamson Company, filed in the receivership of the Elliott-Taylor-Woolfenden Company. From a decree confirming the report of the master rejecting the claim, petitioner appeals. Reversed and remanded.

The Lamson Company installed what was called a service system (a cash and parcel carrier), in the retail store of the Elliott Company. This was pursuant to a contract dated August 16, 1920, and modified by two later agreements. As modified, it named the Lamson Company as owner and the Elliott Company as user; and by it the owner agreed to install a specified carrier system on the premises of the user, and to continue to supply all parts necessary to keep the system in proper repair. The term of the agreement was to be ten years, though it might be aumatically continued after the term, by common consent. It was not contemplated that the title to the system itself should ever pass to the user;[1] on the contrary, the user unconditionally agreed to return to the owner at the end of the agreement or any extension the system in as good order and condition as when put in, reasonable use and wear excepted. The user agreed to pay to the owner "for the cost of installing or continuing this Lamson system, for the license to use it under the owner's letters patent, for the agreement to supply parts for repairs, and for the right to operate this system in these premises during the term of this agreement, an amount equal to the sum of all partial payments herein provided, as follows:" $512 every three months (thus making a total of $20,480 for the term). The user was also given the option to cancel the agreement at the end of the first five years upon the payment of all the amounts which had accrued to that time, and a specified sum of $5,722, and this payment was to be made in connection with and in recognition of the owner's right then to remove the system after the cancellation. The record does not show how this amount was to be arrived at, but it would seem to have taken into account the remaining payments, their reduction to present worth, and such benefits as the owner received through the cancellation and return.

It was further provided that "these presents are upon the condition that, in the event of a breach by the user of any of the covenants herein contained, or if during the term of this agreement, or any extension thereof, bankruptcy or insolvency proceedings are commenced by or against the user, * * * or if receivers are appointed to take possession of the business of the user, * * * or if the user discontinues business in these premises, * * * all unpaid amounts to the end of this agreement, or any extension of it, shall, without notice of [or] demand by the owner, be at once precipitated and become due and payable; and in addition thereto the owner may enter the premises, forcibly if necessary, take possession of and remove this system and thereby terminate all rights and interest of the user therein. It is agreed that the user's interest therein shall be valued at a sum equal to 20 per cent. of the amount of the payments for said unexpired term, and that this amount shall be allowed in deduction of the user's obligation herein."

Payments were continued until January 30, 1924. At that date, upon a suit brought in equity in the court below, alleging that the defendant was solvent and that the business ought to be continued and the good will preserved, a receiver was appointed, who took possession and continued the business. He paid the installments accruing until, under the order of the court, he sold all the assets to one Netzorg. The Lamson Company then filed in the receivership case a petition for an order reclaiming the system. This proceeding seems to have been dropped upon the making of a new agreement between the owner and Netzorg, for the term of two years, by which he agreed to pay the same quarterly amounts, and which agreement, we assume, was in the same form. The evidence indicates that the owner was not able to negotiate any longer term with Netzorg, and that very shortly the latter's commercial enterprise also failed. Eventually the owner presented against the receivership estate a claim for the specified quarterly payments, from the date of last payment by the receiver to the end of the first five-year period, plus the cancellation price which might have been availed of at that time, and less the total amount of the two-year renewal contract made with Netzorg. The net claim was $5,356. It would seem that, as charging up the five-year cancellation price gave the user more credit than he would have had under the 20 per cent. clause, this latter credit was not given. The master reported a rejection of the claim, and the court confirmed the report.

Francis W. Allen and De Lancey C. Haven, both of Detroit, Mich., for appellant.

---

[1] There was an option, good for the first 90 days only, to purchase the system at a stated price, which was 56 per cent. of the total installments.

John C. Bills, of Detroit, Mich. (Stevenson, Butzel, Eaman & Long, of Detroit, Mich., on the brief), for appellees.

Before DENISON and MOORMAN, Circuit Judges, and ANDREW M. J. COCHRAN, District Judge.

DENISON, Circuit Judge (after stating the facts as above). The question before us on this appeal is whether this claim should have been allowed against the receivership estate. It·is to be assumed that the owner did reclaim the system before making, and in·order to make, the new contract with Netzorg, although, in fact, Netzorg had become lessee of the building and the owner did not remove the system therefrom. It is plain that by the letter of the contract, a claim had accrued to the owner for at least as much as the one filed. The claim can be defeated only by construing the contract as not giving the right to prove the debt ·after reclamation, or by holding that the contract, if construed to permit·such proof, is invalid.

[1] The contract is generally similar to that which was before this court in the case of Miller Bros. (C. C. A.) 219 F. 851, L. R. A. 1916B, 1099, Ann. Cas. 1916A, 946. In that case it was thought that to give the owner the rights both to precipitate and collect the future payments and to reclaim the property would, or at least might, make the contract obnoxious to the rules against forfeiture, and that hence the contract should not be thought to give this double right, if such construction could be avoided. Thereupon it was said that, since the contract in that case was not clear and explicit in giving both rights, it would be interpreted as intending to give them alternatively. We cannot think that reasoning applicable to the present contract. That one differed substantially from this, as to this point of double right. It provided that, upon contingencies resembling those specified in the present contract, "the balance of the rental for the entire term of this lease shall be considered at once due and payable, without notice or demand on the part of the lessor; and it is also provided that the lessor may at any time, after such a breach of this lease occurs, enter the premises, take possession of such system, and thereby terminate all right and interest of the lessee in said system." After that decision, and not improbably as its result, the Lamson Company changed its form of contract so that, after providing for .the precipitated maturity of future installments, it said, "and in addition thereto, the owner may enter the premises," etc. In view of this history, interpreta-

tion, and subsequent reforming of this·contract, it is, we think, entirely plain that. it was the intent of both parties to give the owner both of these rights, not alternatively, but cumulatively.

[2] Hence the only question is as to the validity of the contract thus construed. .The decision of this court in the Miller Case might well be considered as critically depending upon the conclusion that the two rights were alternatively given, and so it might be thought that what is said about invalidity through the forfeiture element was dictum; and yet the discussion and conclusion as to the validity of a promise to pay the remaining payments in spite of re-entry, were persuasive in leading the court to take the final step, and we are not inclined to disregard, as merely dicta, the things said about validity. The present contract, however, contains material nonparallel and distinguishing features. The decision in this aspect there turned upon the analogy between the contract and a lease of real estate; indeed, that analogy had been adopted by the parties when they used the terms "lessor," "lessee," "rental," etc.; and it does not seem to have appeared in that record, either by the terms of the contract or by the proofs, that there was any lack of that analogy. In the new contract the nomenclature of a lease has been abandoned, although that would not be very important if the substance thereof were preserved. It is the theory of a real estate lease that the continuing possession is the consideration for the continuing rent, and so the right to collect future rentals, after termination of the lease and re-entry, has been denied, because there remained no consideration for the future promises. It is not characteristic of a real estate lease that the lessor at the making distinctly parts with a consideration separate from possession and which is to be repaid to him only gradually by rent installments spread over the whole period; and, if such a situation does exist, as where he makes special alterations and improvements which are useless to him on re-entry, it is not clear why he may not both re-enter and recover the damages therefor.

The contract in this case carefully specifies considerations which might not be completely made good to the owner until the last quarterly payment is received. These are (a) the cost of installing; (b) ·the license to use under patents; (c) the free supply of parts for repairs; and then (d) generally, the right to operate the system. For all of these things the user agrees to pay a total sum, divided into installment payments. We

may well assume that the original cost of making the sale of such a system and system rights, and also the cost of installation, may be large. The value of the granted patent licenses is indefinite, and the extent of such existing licenses has an effect upon the value of the patents themselves. The obligation to furnish repair parts must be made good by the present and continuing maintenance of a stock of repairs. In addition, it appears without dispute in this case (as the court in the Miller Case for lack of convincing proofs was unwilling to assume), that the system, for the purpose of tearing out of the building and restoring to the owner, is worthless. If parts are removed with such care that they can be used elsewhere, it costs more to pay the necessary skilled labor therefor and for refinishing them than it would to make new parts; and, if the parts are torn out cheaply and carelessly, they are junk, worth less than even that removal cost. Hence it seems probable enough, if not certain, that a provision for precipitating future payments, even after reclamation, is necessary for the protection of the owner. Of course, it may work hardship to the user and excess profit to the owner in some cases, but that does not make it so generally arbitrary and in the nature of a mere forfeiture as to destroy its validity.

In another respect the analogy to a lease of real estate fails. The lessor has a single piece of real estate. He cannot multiply it. With reference to a manufactured article, he may make as many as he can find customers for. If on retaking an article once placed he sells it to another, he thereby destroys his outlet for a new sale with full profits. This feature is important also in deciding whether the recovery of the future payments, after reclamation, is so unreasonable as to indicate a penalty, rather than a rightly stipulated damage.

Another distinguishing feature from the Miller Case is that this contract recognizes and stipulates the value of the credit which the user ought to have in case of reclamation. It does this under the name of the value of the user's interest, and, though this seems an inappropriate name, this credit will serve as well to represent the agreed value to the owner of the property he gets back and of the maintenance burden he escapes.

[3] Upon this record we see no reason why this contract, considered broadly as one which expressly permits both a retaking for the user's default, and a precipitation and collection of the future payments, should be condemned as necessarily invalid because in-

volving a penalty or forfeiture. A material part of the distributed investment cost had not been repaid, and was not recovered by the retaking; the property retaken is of little if any value to the owner; a presumptively fair allowance is made to the user to cover reasonable values or savings secured to the owner by the retaking; and the owner is entitled to separate, full profits from as many systems as he can place. When competent parties, dealing as strangers, have provided for stated damages on default, and the damages are made proportionate to the extent of the default, and probably approximate the actual damages, no reason is seen for defeating that contract.

Perhaps an attempt to collect the full amount of future payments without reduction to their present value and without taking into account the future maintenance which the owner escaped, would have an aspect of forfeiture; but here the claim is filed only for the minimum amount accruing if the user had exercised the most favorable option—that to the five-year cancellation—and the amended claim was not filed until after the five-year period had expired and all maintenance duty for that period had been performed. Perhaps also if the owner after default made a new contract with the successor tenant in the building whereby the owner avoided actual loss upon the retaking, the user could make out a case for equitable protection, or an aspect of forfeiture would then arise, even at law; but here in the claim filed the owner had given full credit for everything which it had been able to resell in this way. Perhaps some different rule may be applicable in bankruptcy; that we do not decide.

We have pointed out that the present case is to be distinguished from the Miller Bros. Case, both by the presence of an express covenant and by satisfactory proof that the character and reclaimable value of the property involved made inappropriate the application of the rules of real estate law. The other reported cases involving the Lamson contracts are to be distinguished at least as clearly. In Lamson v. Bowland (C. C. A. 6) 114 F. 639, there is no agreement that the owner could have both reclamation and recovery of future payments. An effort was made to work out that result indirectly; and, lacking any express agreement therefor, this effort was disapproved. In Re Quaker Drug Co. (D. C.) 204 F. 689, the lease was construed not to provide for precipitation of future payments in case of bankruptcy; no other question was involved. Re Merwin

(D. C.) 206 F. 116, is to be distinguished for the same reasons as the Miller Bros. Case.

We think the claim should have been allowed as filed.

Reversed and remanded.