ELECTRICAL PRODUCTS CONSOLIDAT-
ED v. SWEET.

SAME v. LIPSCOMB.

SAME v. ROEDER.
Nos. 1330–1332.

Circuit Court of Appeals, Tenth Circuit.
April 7, 1936.

W. W. Grant, Jr., Erl H. Ellis, and Grant, Ellis, Shafroth & Toll, all of Denver, Colo., for appellant.

Cass M. Herrington and G. Walter Bowman, both of Denver, Colo., for appellee Sweet.

G. Walter Bowman, of Denver, Colo., for appellee Lipscomb.

Fred Farrar and Terrell C. Drinkwater, both of Denver, Colo., for appellee Roeder.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

These three appeals involve three contracts with three bankrupts. Common to all of them is a question of the interpretation of similar contracts for the construction and maintenance of Neon advertising signs.

Neon signs are constructed to order; there is a substantial expense to maintenance and service. When they are dismantled, they have no substantial salvage value, the cost of dismantling ordinarily approximating the junk value of the materials salvaged. Sometimes the sign may be sold, in which case it does have substantial value. It is not practicable to break down the cost of a particular sign into its component elements, but from a wide experience over several years, it has been determined that the price to the purchaser is made up of the following items:

| | |
|---|---|
| Cost of construction and installation | 29.7% |
| Selling expense | 12. % |
| General overhead and carrying charges | 24.3% |
| Bad debts | 11.4% |
| Maintenance and service | 16.8% |
| Net profit | 5.8% |
| Total | 100. % |

The signs are furnished to customers upon contracts for five year periods on monthly rentals. By their terms appellant, called "lessor" in some of the contracts and "owner" in others, agreed to construct and maintain the signs, to pay taxes and insurance thereon, and to protect the "lessee" or "user" against claims of patent infringement.

The contracts here involved were all breached during their terms, and claims were filed in the bankruptcy courts for the full balances of the unpaid rentals, less amounts realized on repossession. The referee and the trial court allowed damages on the basis of the construction cost and selling expense—about 41% of the contract price—less the rentals received and the salvage. If the lessee had paid 41% of the rentals when the contract was breached, it was held there was no recoverable damage. The clauses referring to breach and remedies differ somewhat in the several contracts, but all briefs are directed at one of the forms, it being assumed, and it would seem correctly, that the difference in wording is not here important.

The contract provides that the lessee is deemed to have breached it by, among other things, insolvency, appointment of a receiver, or bankruptcy. It is then provided:[1]

"In any such event the Lessor may, upon notice to the Lessee, which notice shall conclusively be deemed sufficient if mailed or delivered to the premises where the sign was or is located, take possession of the sign and declare the balance of the rental herein provided for to be forthwith due and payable, and Lessee hereby agrees to pay such balance upon such contingency. In lieu of accelerating said rentals as aforesaid, Lessor may terminate this lease and without notice, remove and repossess said sign and recover from Lessee, any damages which Lessor may have suffered by reason of Lessee's breach or default. Time is of the essence of this lease with respect to the payment of rentals herein provided for. Should Lessee after Lessor has declared balance of rentals due and payable, pay the full amount of rental herein provided, he shall then be entitled to the use of the sign, under all of the terms and provisions hereof for the balance of the term of this lease. If the Lessor shall institute any action or suit for the enforcement of any of the obligations of the Les-

[1] Through some inexcusable carelessness, more than one of the contracts in the record and both briefs carry the clause "In lieu of accelerating said rentals as aforesaid" as the last clause in the preceding sentence instead of the first clause in the succeeding one. It does not make sense there, for the clause to which it is subjoined in the briefs is an acceleration clause, and it is senseless to say the lessor may accelerate in lieu of accelerating. We accordingly use the one contract which appears to be correctly transcribed.

see hereunder including the payment of damages, Lessee shall pay in addition to all amounts found due from Lessee, a reasonable attorney's fee. No waiver by either party hereto of the non-performance of any term, condition or obligation hereof shall be a waiver of any subsequent breach of or failure to perform the same, or any other term, condition or obligation hereof. It is understood and agreed that the sign is especially constructed for the Lessee and for use at the premises now occupied by the Lessee; that it is of no value unless so used, and that it is a material consideration to the Lessor in entering into this agreement that Lessee shall continue to use the sign as contemplated."

The trustee in bankruptcy rejected the contract in Number 1332, and the lessor resold the sign for $1,800 gross or $739.60 net. In Number 1331 the lessor resold the signs for $1,485 gross without notice to the trustee. In Number 1330 the sign was removed, dismantled, and reduced to scrap iron without the knowledge or consent of the trustee. When the breaches occurred, the lessor in writing demanded the remaining rentals under the acceleration clause. In no case did the lessor maintain or offer to maintain the sign for the use and benefit of the lessee. It was stipulated that lessor repossessed the signs to protect itself against claims for personal injury and to protect its reputation. These are good reasons for the lessor's actions, but it does not change the fact that the lessor did repossess and dispose of the signs and thus effectively deprive the lessees of further use thereof.

Appellant insists that the provision for accelerating rents in case of breach is a valid and enforceable stipulation for damages. In Bassett v. Claude Neon Federal Co. of Kansas, 65 F.(2d) 526, this court approved a finding of the referee that 75 per cent of the unpaid rentals approximated the damage flowing from the breach of a contract for Neon signs and was enforceable as liquidated damages. In Electrical Products Corporation v. Mosko, 88 Colo. 447, 297 P. 991, 993, this provision was upheld; but there the lessor had not disposed of the sign nor were the lessees bankrupt; on the contrary the lessor repossessed the sign and held it "for the defendants as contemplated by the contract. * * * The plaintiff must keep the sign in proper condition for redelivery and once redelivered must continue the service to the end of the term." The Colorado court relied upon Lamson Co. v. Elliott-Taylor-Woolfenden Co. (C.C.A.6) 25 F.(2d) 4, 5, 58 A.L.R. 295; but in that case only 80 per cent of the unpaid installments was stipulated as the damage, and the court thus in part distinguished its earlier decision in Re Miller Bros. Grocery Co. (C.C.A.6) 219 F. 851, L.R.A.1916B, 1099, Ann. Cas.1916A, 946, which declined to enforce in bankruptcy a 100 per cent provision. On the other hand in Electrical Products Corporation v. Ziegler Drug Stores, 141 Or. 117, 10 P.(2d) 910, 15 P.(2d) 1078, it was held that a clause requiring payment of 90 per cent of the unpaid rentals in a Neon sign contract was unenforceable.

There is no claim here that the lessor repossessed these signs for the lessees and now holds them on their account, standing ready to replace the signs and resume the service contracted for. This is not a suit for the price of services performed or tendered. All the signs but one have been resold by lessor, and that one has been dismantled, cut apart, and reduced to scrap iron of a net value of $25. Furthermore, bankruptcy having intervened and the trustees not having elected to assume the contracts, lessor could not hold the signs for the trustees' benefit.

The lessor is in this dilemma: If the clause is construed as entitling it to accelerate the rentals only in event it repossesses the signs for the lessees and holds itself in readiness to resume its service—as the Colorado court held—its resale of all but one, and the destruction of that one, prevents recovery. If the clause is construed as entitling lessor to retake the signs for its own account on breach, and still collect 100 per cent of the unpaid rentals without commutation of deferred rentals to a cash basis, plus an attorney's fee, then the damage stipulated is so disproportionate to any damage which might be suffered, that it is impossible to say that the parties intended it as a measure of problematical damage. On the contrary, if the contract contemplates that lessor should retake and perhaps resell the signs and still collect the full unpaid balance, without diminution for unperformed service, unearned interest, unpaid taxes and insurance, then it undoubtedly is a forfeiture provision and unenforceable. In Kothe v. R. C. Taylor Trust, 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382, it was held that a provision entitling the lessor of real estate to

the full payment of rent reserved in case of a breach was a forfeiture provision and unenforceable. There is a difference between real estate and a Neon sign; but in neither can the damage for breach ever reach the full amount of unpaid rentals plus reclamation of the leased article. The Restatement of Contracts, § 339, states the governing rule:

"An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

To the same general effect, see Larabee Flour Mills Co. v. Carignano (C.C.A. 10) 49 F.(2d) 151; Burns Trading Co. v. Welborn (C.C.A.10) 81 F.(2d) 691, certiorari denied, 56 S.Ct. 936, 80 L.Ed. ——.

 We agree therefore that lessor is entitled to recover only its actual damage for breach of contract. The lessor did without notice remove and repossess the signs and is therefore entitled to damages as provided in the alternative provision of the contract. It is also entitled to its actual damage as a matter of law. The referee and trial court awarded relief on this basis, but in so doing applied an erroneous measure of damage. Instead of taking lessees' promises to pay as a starting point from which to arrive at the damage flowing from a breach of such promises, the referee selected two of the six elements entering into the price, discarded the others, and arrived at damage from that false basis. That such method is bound to bring an erroneous result is demonstrated by the fact that in Number 1332 a breach was admitted in that the bankrupt had failed to pay $3,600 as promised; nevertheless the referee found that no damage resulted. The law has long been settled that in assessment of damage for breach of contract, the injured party is entitled to the benefit of his bargain. Anticipated profits not included in a fixed price may be so remote or speculative as to resist reasonable certainty in ascertainment; but if one breaches a contract to buy a horse for $200, he cannot defend by showing that the horse cost the seller only $150. Sec. 329, Re-

statement of Contracts, states the applicable rule:

"Where a right of action for breach exists, compensatory damages will be given for the net amount of the losses caused and gains prevented by the defendant's breach, in excess of savings made possible, if established in accordance with the rules stated in §§ 330-346."

In the Comment to that section, it is stated:

"Full performance by the defendant as agreed would usually result in a gain by the plaintiff; and the breach by the defendant is a prevention of this gain, as the defendant has reason to know. The value of the promised performance is always one of the chief elements in fixing the amount that may be recovered as damages. The difference between this value and the cost of the plaintiff's own performance, if the latter is the lesser sum, is a profit to which the plaintiff practically always has a right as a part of the damages. It may be otherwise with respect to profits that are more indirect and remote (see §§ 330, 331). The plaintiff has a right to more than this profit, however, if at the time of the breach he has already partly performed his part of the contract and has not yet been compensated therefor; the amount to be deducted is the cost of completion only, thus allowing recovery of expenditures as well as net profits (see § 333). The gains referred to in the present Section are more than the net profits that would be realized from full performance of the contract; they are the prospective gross receipts, while profits are the balance of receipts over expenditures."

Mr. Williston states the same rule with succinctness:

"The law in giving him a right of action for damages, therefore, should adjust the damages in such a way as to equal the value of the performance." Williston on Contracts, § 1339.

In Philadelphia, W. & B. R. Co. v. Howard, 54 U.S. (13 How.) 307, 344, 14 L.Ed. 157, it was held that profits—the gain which plaintiff would have realized upon performance—are recoverable as actual damages flowing from breach of contract. The court continued:

"And in case of a contract like this, that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference is

the inducement and real consideration which causes the contractor to enter into the contract. For this he expends his time, exerts his skill, uses his capital, and assumes the risks which attend the enterprise. And to deprive him of it, when the other party has broken the contract and unlawfully put an end to the work, would be unjust. There is no rule of law which requires us to inflict this injustice. Wherever profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, or speculations, or states of the market, are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value, or cost. * * * We hold it to be a clear rule, that the gain or profit, of which the contractor was deprived, by the refusal of the company to allow him to proceed with, and complete the work, was a proper subject of damages."

█ By starting from the wrong end, the referee not only eliminated that part of the price representing gain from the contract, but also legitimate items of out-of-pocket cost. The business world knows that bad debts and overhead and carrying charges enter into the price of every commodity sold; there is no reason why the courts should decline to recognize such facts. In any event, the lessees agreed to pay sums certain; they breached their agreements; the measure of damage is the cash value of those agreements less whatever savings accrue to lessor from the breach.

█ It is contended that the lessor did not prove its damage because it relied upon averages to prove the breakdown of the price. In the first place, the price is the starting point; the breakdown is only resorted to for the purpose of mitigating the damage, that is, establishing the savings accruing to lessor from the breach. Again, it is stipulated that it is not possible to determine the precise breakdown of the price in each separate contract, and hence resort is had to averages. That is, averages are the best evidence of damage available; in such case, averages are competent, because the law does not deny any relief to one certainly damaged because of difficulty in measuring his damage. Shannon v. Shaffer Oil & Refining Co. (C.C.A.10) 51 F. (2d) 878, 78 A.L.R. 851; Indian Territory Illuminating Oil Co. v. Townley (C.C.A. 10) 81 F.(2d) 159. Still further, averages

of many contracts are more dependable than the study of one job; averages level out fortuities in a single contract which might distort the picture.

█ To arrive at the actual damages in these cases, the unpaid balances should be used as a basis; from that there should be deducted the cost of unperformed maintenance and any savings in insurance and taxes brought about by the breach. Under the contract, the resulting amount would be paid in monthly installments in the future. To pay it in a lump sum upon breach would give lessor more than it bargained for, since, with a notable exception in a recent act of Congress, money due in the future is not worth the same sum paid presently. The amounts so computed should then be commuted to a cash basis as of the date of payment. Interest on due but unpaid installments should offset commutation for the future, for while interest is not allowable as such in bankruptcy, in arriving at the cash value of future payments, that value is affected by the offsetting factor of installments unpaid when due. From it all should be deducted the present net value of salvage realized, either as scrap iron or on a reletting of the signs. And in Number 1332 a counterclaim for goods sold lessor by lessee and not paid for, should be offset.

█ Lastly, it is asserted that under the doctrine of Manhattan Properties v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824, Irving Trust Co. v. Perry, Inc., 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379, and Miller v. Irving Trust Co., 296 U.S. 256, 56 S.Ct. 189, 80 L.Ed. ——, the claim is not one provable in bankruptcy. On the other hand, it is asserted that leases of personal property stand on a different footing than leases of real estate. The referee and the trial court held the claim provable in bankruptcy and we agree.

It is unnecessary to decide whether a broad distinction exists between leases of real and personal property in this connection. The reasons advanced for denying recovery for future rents on real estate are partly historical, and partly practical. Real estate remains intact after a breach, and the measure of future damage is often highly speculative. That may be true of some personal property. But here we have advertising signs which are constructed to order, and generally the breach of the lease destroys the subject matter; whether a sign can be released at all de-

pends upon the nature of the sign. In these cases, as we imagine is true in most, there is no substantial speculation about salvage value; it is known, and was known when the cases were tried, to a penny. To deny recovery because the claims are too indefinite to admit of proof would be to fly in the face of the facts. On the cross appeal in Central Trust Co. v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, future damages were allowed for the breach of an executory contract to haul passengers and baggage from a hotel, and the damages measured by the full contract price less the amount realized from a new contract for the same privileges. That principle applies here.

The judgments are reversed with directions to allow the claims in accordance with this opinion.

Reversed.