L. J. HOLLAND, Appellant, *v.* THE CRUMMER CORPORATION, a Nevada Corporation, and R. E. CRUMMER, Respondents.

No. 4409

January 17, 1962            368 P.2d 63

2

*W. Howard Gray* and *Goldwater, Taber and Hill,* of Reno, for Appellant.

*Grubic, Drendel & Bradley,* of Reno, for Respondents.

**OPINION**

By the Court, McNamee, J. :

On November 18, 1957 appellant Holland as first party entered into a written agreement with one Beeler as second party, hereinafter referred as the "exchange agreement," wherein appellant agreed to transfer to Beeler shares of stock in three corporations, together

with all of the assets of said corporations including the Holland Ranch consisting of 45,000 acres of land and all livestock on said ranch. The agreement recited that there "[are] 9300 head of cattle consisting of at least 4500 cows, 800 two-year old heifers, 800 yearling heifers, 205 bulls and 2000 mixed calves," and then contained a warranty in the following words: "First Party warranting that there are a minimum of 8,000 head of cattle and at least 6,362 one to five year old ewes and bucks."

The purchase price for the property was in part the Bellevue-Staten Apartment House in Oakland, California, and also $550,000, of which $100,000 was to be paid upon the execution of the agreement by second party.

The exchange agreement further provided that respondent Crummer "shall approve and accept this agreement, so that he may enter into a further agreement with Charles W. Beeler and become a second party hereto," and "as soon as either party signs this agreement it shall constitute an offer which must be accepted or rejected by the other party within 24 hours thereafter."

The agreement also provided that the parties deliver to a title company in Oakland, California, escrow instructions, the escrow to be a regular 30-day escrow "which may be continued for an additional 30 days if necessary so that second party may, prior to the close of escrow satisfy themselves as to the warranty on the number of livestock."

The exchange agreement was signed by Holland as first party and Beeler as second party and "approved and accepted as such" by Crummer.

The evidence shows that immediately after Crummer signed the agreement on November 18, 1957 he entered into a joint enterprise agreement with Beeler, and Crummer made the $100,000 down payment required by the exchange agreement; that after the execution of the exchange agreement, Beeler was unable to convey as part of the purchase price the Bellevue-Staten property. Crummer then wished to withdraw from the exchange

agreement, but Holland advised him that he was bound thereto and would subject himself to a suit for specific performance of the exchange agreement if he did not perform. Thereupon negotiations were had between all three parties resulting in a release agreement dated December 13, 1957, which provided that Holland and Beeler mutually released each other from all terms of the exchange agreement and then went on to state: "In other words, neither Mr. Holland nor Mr. Beeler are required to perform under this contract." Following the signatures of Holland and Beeler to this release, the following appears: "The above instrument is approved by the undersigned. [Signed] R. E. Crummer"

Possession of the ranch was delivered to Crummer and he employed Holland as general manager. No escrow was ever set up under the exchange agreement. Although one Bankofier had orally reported to Beeler the result of his investigation as to the number of cattle on the ranch, no proper count of the cattle was completed until December of 1958, at which time it was ascertained that there were approximately 5,000 head of cattle on the ranch as of November 18, 1957 rather than the warranted 8,000 head. Thereupon, the present suit was commenced by Crummer for a breach of the said warranty.

The lower court found that the warranty was made not only to Beeler but also to Crummer, that there was a breach thereof, and awarded Crummer money damages for such breach. Appellant does not complain of this finding that the warranty was made by the exchange agreement to both Beeler and Crummer. His chief assignment of error is that the trial court erred as a matter of law in holding that the exchange agreement had not been annulled by a novation whereby Crummer alone became the purchaser under a new, separate, and independent oral agreement which did not contain a warranty as to the number of cattle.

The release agreement of December 13, 1957 expressly removed Beeler as a party from the exchange agreement of November 18, 1957. There is no express provision relating to the removal of Crummer as a party, however. These facts are conceded by all parties. Appellant

contends, however, that because Crummer was a second party to the exchange agreement, his approval of the release agreement absolved appellant from any obligation owed to either Beeler or Crummer under the exchange agreement, and likewise released Crummer from the exchange agreement, thereby effecting an annulment of the exchange agreement; that the novation resulted from the subsequent oral agreement which changed the terms of the exchange agreement, particularly with respect to the parties and the consideration, and that no warranty was contained in the oral agreement.[1] If there had in fact been a novation then counsel's contention that the exchange agreement was annulled as a matter of law would be correct. The trial court determined, however, from the evidence that no novation resulted from the release and the subsequent oral agreement between Holland and Crummer. This determination is found in the opinion of the trial court incorporated by reference in the formal findings of fact.

After reciting that Holland was informed on December 8, 1957 that Beeler was unable to convey title to the Bellevue-Staten Apartment House, the opinion then states:

"17. *On 10 December, 1957,* a meeting was held in Beverly Hills, California, for the purpose of working out a satisfactory manner of eliminating from the transaction Mr. Beeler and his Bellevue-Staten Apartment property.

"At that meeting the defendant (Holland) was represented by himself, Mr. Holland in person, and by his attorney Mr. Richard Levin of Chicago. The plaintiff (Crummer) was represented by Elmer Fox an accountant from Wichita, Kansas, and plaintiff's attorney from Reno, Nevada, William O. Bradley. The plaintiff's representatives suggested the deal be terminated by return of all consideration paid. The defendant and his attorney refused to consider such solution. Then the plaintiff's representatives suggested that the plaintiff

---

[1] In the oral argument counsel for appellant stated that the novation occurred at the moment the release was executed but in a complete form subsequently thereto when the oral agreement was entered into.

(Crummer) would forfeit the $100,000.00 he had paid. This proposal was refused by the defendant and his attorney. Then the plaintiff's representatives suggested that a completely new contract be drawn and entered into between plaintiff (Crummer) and defendant (Holland). The defendant (Holland) and his attorney (Levin) rejected this proposal. *The defendant (Holland) and his attorney (Levin) contended the Exchange Agreement was binding on the plaintiff (Crummer) and that some consideration in lieu of the Bellevue-Staten Apartment property could be agreed upon, but if that could not be done then Holland would sue Crummer for specific performance of the contract.*

"At that meeting Mr. Fox, plaintiff's accountant, stated he would like to see Mr. Crummer out of the deal because he was not familiar with the livestock business. *The defendant (Holland) stressed the fact he was warranting at least 8000 cattle and, therefore, Crummer was not taking any chances.*

"At that meeting, the persons present worked out an agreement whereby cash and notes would be given by the plaintiff (Crummer) as part of the purchase price of the Holland Ranch property in lieu of the Bellevue-Staten Apartment property provided a release could be obtained from Beeler and subject to the approval of the plaintiff (Crummer).

\* \* \* \* \*

"18. *On or about 13 December, 1957,* the defendant (Holland) and Mr. Fox went from Los Angeles to San Francisco, Calif., to meet with the plaintiff (Crummer) and Beeler.

"19. *On 13 December, 1957,* the defendant (Holland), the plaintiff (Crummer) and Mr. Fox, the plaintiff's accountant, met in San Francisco, California. At that meeting, the plaintiff (Crummer) accepted the arrangement set out in item 17 above, provided the defendant (Holland) would manage the ranch property for one year at a salary of $1,000.00 a month and provided releases could be obtained from Beeler.

"Mr. Beeler was thereafter called into the meeting

and a release was signed by the defendant (Holland) and Beeler.

"At that meeting the plaintiff (Crummer) asked the defendant (Holland) what procedure could be used to determine the number of livestock on the ranch, as warranted in the contract. The defendant (Holland) explained that the cattle were scattered over the range and the fall of the year is the only time when an actual count could be obtained. It appears from the testimony of the plaintiff (Crummer) that he did not accept the livestock count made by Bankofier but was relying on the defendant's (Holland) warranty contained in the written contract."

The trial court concluded from these findings that the exchange agreement was not completely abandoned as claimed by appellant, but on the contrary that Crummer and Holland by the release and subsequent agreement intended the exchange agreement to be carried out with the exception that (a) Crummer alone would complete the purchase of the ranch by giving cash and notes as part of the purchase price in lieu of the Bellevue-Staten Apartment House, and (b) the escrow arrangement would be dispensed with. We will not disturb this determination since the record supports it. Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747.

Parties to an existing contract may subsequently enter into a valid agreement to extinguish, rescind, or modify the former contract. For the subsequent agreement to constitute a rescission, it must be made with the mutual consent of the parties. Webb v. Moran, 186 Okla. 140, 96 P.2d 308.

The record contains abundant evidence to show that neither Crummer nor Holland intended to release each other from the exchange agreement. In fact it contains specific proof that Holland reiterated his agreement of warranty not only at the preliminary meeting in Beverly Hills, California, mentioned above, but also at the San Francisco meeting of the parties when the release was signed. This evidence supports the trial

8

court's interpretation of those words in the release agreement that neither Holland nor Beeler "are required to perform under this contract" to mean that Holland was not obligated to perform the exchange agreement only insofar as Beeler was concerned. See Child v. Miller, 74 Nev. 223, 327 P.2d 342.

"When the language used is fairly susceptible to one of two constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties, * * * not to show that 'the parties meant something other *than* what they said' but to show 'what they meant *by* what they said.' * * * Where any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution—including the object, nature and subject matter of the agreement, * * *—as well as to the subsequent acts or declarations of the parties 'shedding light upon the question of their mutual intention at the time of contracting' * * *."[2]

Furthermore the construction placed upon a contract by the parties thereto is entitled to weight in determining the proper interpretation of the instrument. Flyge v. Flynn, 63 Nev. 201, 166 P.2d 539. And it is for the fact-finding tribunal to determine the construction that the parties gave it by their action. Coleman Bros. Corp. v. Commonwealth, 307 Mass. 205, 29 N.E.2d 832.

The conclusion, properly reached that the parties did not intend to annul the exchange agreement insofar as it concerned Holland and Crummer, precludes the subsequent release and oral agreement from operating as a novation. 39 Am.Jur., Novation, sec. 24; see Walker v. Shrake, 75 Nev. 241, 339 P.2d 124; Williams v. Crusader Disc. Corp., 75 Nev. 67, 334 P.2d 843.

[2]Quoted with approval in Berg Metals Corp. v. Wilson, 170 Cal. App.2d 559, 568, 339 P.2d 869, 874, from Barham v. Barham, 33 Cal.2d 416, 422, 202 P.2d 289, 293.

Appellant maintains that even if the warranty provision in the exchange agreement remains in full force and effect (a) Crummer waived the breach of warranty by failing to insist on an escrow, and (b) Crummer is bound by the acts of Beeler in investigating the number of cattle independently and accepting his own count. Here again appellant disregards the trial court's findings to the contrary which, supported by competent evidence, state: "In this case all the parties understood that the cattle could not be rounded up and counted until the late summer and fall of 1958. The defendant (Holland) himself said if the cattle were to be gathered and counted he 'wanted at least six or eight months and maybe more to gather the final count.' * * * the 60-day period for the buyer to satisfy himself as to the number of cattle provided for in * * * the Exchange Agreement * * * was also waived by both parties when the escrow was dispensed with by subsequent verbal agreement."

The lower court having found that the warranty extended to Crummer as aforesaid, that it was never rescinded, and that a breach of warranty was shown, properly awarded respondents damages for such breach. We are not concerned on appeal with the amount of damages so awarded.

Affirmed.

BADT, C. J., and THOMPSON, J., concur.