YOUNG ELECTRIC SIGN COMPANY, A CORPORATION, APPELLANT, v. HOTEL LAST FRONTIER CORPORATION, A CORPORATION, RESPONDENT.

No. 4532

November 15, 1962                    375 P.2d 859

[Rehearing denied November 28, 1962]

*Samuel S. Lionel* and *E. M. Gunderson,* of Las Vegas, for Appellant.

*G. William Coulthard* and *Franklin N. Smith,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C. J.:

This appeal presents but two issues for our determination. The first has to do with the pleadings, and the second deals with the sufficiency of the evidence to support the findings.

(1) The parties will be referred to as they were in the court below. Plaintiff, Young Electric Sign Company, appellant here, alleged simply in its complaint that "on or about April 3, 1957, plaintiff leased certain electric signs to defendant at the agreed monthly rental of $500 per month commencing as of March 18, 1957," and that "by reason of the said agreement defendant owes plaintiff the sum of $3,750, with interest from January 1, 1959."

Defendant's answer, following its general denial, contained an affirmative defense, alleging that on or about March 14, 1955, New Frontier Hotel, Inc., a corporation, had leased the signs in question from plaintiff;

that on or about March 17, 1957, New Frontier Hotel, Inc., vacated the real property which it was leasing from the defendant, leaving the aforementioned signs thereon; that on or about April 3, 1957, the defendant had agreed to pay to plaintiff the sum of $500 per month until such time as defendant had found a new tenant for its hotel property; but that on or about October 1, 1957, the parties had modified their original agreement by another to the effect "that plaintiff would receive, and that defendant would pay the sum of $250 per month, plus panel changes until such time as defendant did lease its property to a new tenant." It further alleged that under such modifying contract it had paid plaintiff the sum of $250 on December 16, 1957 for November, 1957 rentals; $250 on March 6, 1958 for December, 1957 rentals; $250 on April 15, 1958 for January, 1958 rentals; $500 on July 1, 1958 for February and March, 1958 rentals; $500 on July 21, 1958 for April and May, 1958 rentals; and $1,814.50 on January 7, 1959 for rentals for June through December, 1958, inclusive, together with a complete schedule indicating such payment as payment in full on account of all obligations for rentals, plus panel changes, all of which were accepted by plaintiff. This was followed by the allegation that plaintiff by accepting the benefits of such payments should be estopped to deny that they were contrary to the modification agreement, and further that the acceptance of such payments constituted an accord and satisfaction.

Appellant asserts that the affirmative defense does not plead a modification of the original agreement but merely the defenses of estoppel and accord and satisfaction, further that the trial court erred in finding a modification because that issue was not within the pleadings. We do not agree. The defendant's pleading fairly apprised plaintiff of three defenses: estoppel, accord and satisfaction, and modification.

The lower court accorded no virtue or merit to the plea of estoppel or accord and satisfaction, and this court, for the purposes of this appeal, may simply regard the same as surplusage.

We find, then, ignoring the plea of estoppel and of accord and satisfaction, a satisfactory compliance of NRCP, Rule 8(b) requiring a party to state in short and plain terms his defenses to the claim asserted. It seems clear that plaintiff was fully apprised of the nature of the defense pleaded. 1A Barron & Holtzoff, Federal Practice and Procedure, Sec. 277 (Rules ed. 1960) ; 2 Moore, Federal Practice, Par. 8.20 (2d ed. 1960). The case was tried on such issue. This is the more evident from the transcript of the testimony which shows that only two witnesses testified, one on behalf of each party, and that virtually the sole subject of their testimony was the question whether the modifying agreement had been entered into and, if so, what the terms thereof were and what was the consideration therefor. NRCP, Rule 15(b) ; Whiteman v. Brandis, 78 Nev. 320, 372 P.2d 468; United Tungsten Corp. v. Corporation Service, Inc., 76 Nev. 329, 353 P.2d 452. Appellant's first assignment of error attacking the sufficiency of the pleading of the first affirmative defense is without merit.

(2) We turn, then, to appellant's assignment, which, though differently worded, is to the effect that the evidence is insufficient to support the court's findings, and particularly its findings Nos. 4 and 7. These were as follows:

"4. That the parties did thereafter orally agree to modify the terms of the said agreement by reducing defendant's payments thereunder to $250 per month, plus service charges.

\* \* \* \* \*

"7. That defendant paid to plaintiff all sums required to be paid by defendant under the said agreement prior to its modification and after it was modified."

In its oral opinion from the bench the court stated:

"Now, the defendant's evidence is to the effect that the payments were reduced from five hundred dollars ($500.00), which included service charges, to the sum of two hundred and fifty dollars ($250.00), plus service charges. I am convinced that this is the situation."

Appellant frankly contends: "Upon the proper assessment of the net legal value of Mr. Friedman's testimony [defendant's witness] taken together with the other evidence in the record, this appeal must turn." Appellant then bitterly attacks the testimony of defendant's witness. Discrepancies and contradictions do indeed appear, but we cannot agree that these rendered the witness's testimony incredible. The trial court did not find it so. His testimony and the testimony of plaintiff's witness Cannon were in direct conflict both as to the times of the conversations referred to and the purport of such conversations. As brief examples of such conflict, Mr. Cannon testified that the only modification agreed to was that defendant might reduce the monthly $500 payments under the original agreement to $250 only for the winter months of November, December, and January. The trial court rejected such contention because plaintiff had continued without protest to accept the $250 monthly payments from the time they first started in November, 1957 until plaintiff's first protesting letter in September, 1958, a date long past the "slow months" of November and December, 1957 and January, 1958, which plaintiff contends were the only months to which the reduction applied. In December, 1957 plaintiff wrote a letter confirming the agreement to accept monthly payments of *$300*. As to this sum Friedman explained that it was a misconception, as it was to include servicing and the panel changes, while the agreement was for $250 *plus* the panel changes. Cannon too explained the discrepancy. He said that it was a typographical error and should have read $500. As to this item, the trial court said:

"Now, if it were a typographical error it would appear to the Court that there would have been no necessity of the letter in the first place because there was already a letter under which they had been operating up to the alleged modification which specifically spelled out the sum of five hundred dollars ($500.00) per month." This was a logical comment.

Mr. Cannon testified: "We billed them [Last Frontier] each month * * * and we sent them a statement for the amount due for that month and *any past*

*due amount.*" And later: "We expected *what we billed for,* and what we sued for, the full amount." (Emphasis added.) Appellant complains that respondent did not produce the monthly bills, but appellant neither demanded their production, nor did it seek to offer copies. Friedman's testimony was corroborated by all the checks to which he had testified, together with the accompanying vouchers specifying particularly the items in payment of which the checks were issued.

The record is replete with further instances in which the testimony of Friedman and the testimony of Cannon were diametrically opposed. The trial court was compelled to accept the testimony of Friedman or the testimony of Cannon. It chose to accept that of Friedman, supported as it was by defendant's canceled checks, vouchers, and other documentary evidence. Appellant's contention that the evidence does not support the findings is without merit.

Appellant further insists that it factually appears that there was no consideration for the reduction in rent.

Friedman testified as follows:

"Q. Was there any further discussion as to the period of time that this [reduction to $250] would continue?

"A. I told Mr. Cannon that several prospective lessees were in the process of negotiating lease contracts with the Hotel Last Frontier Corporation and that as a consideration of his company for his indulgence during the times that we would ask[1] the new prospective lessee to assume the contracts, the balance of the contracts, due the Young Electric Sign Company by the New Frontier Hotel Corporation.

---

[1]Later Friedman used the word "obligate." It developed that the new lessee, Frontier Properties, Inc., did not assume the obligation of New Frontier Operating Company or any other obligation with reference to rental of the sign, but bought the sign from appellant for $12,000. Whether or not this was the result of Hotel Last Frontier Corporation's intercession does not appear. The trial court was not called on to decide that question. Plaintiff's suit was not commenced for the asserted breach of Last Frontier's obligation to "ask" or to "obligate" the new lessee to assume the obligation.

"Q. Did Mr. Cannon say anything after that?

"A. He agreed to this arrangement."

Mr. Cannon denied this statement, but, as noted, the court accepted Mr. Friedman's testimony. Corroborated as it is by the exhibits, it is not our function to say that the trial court believed the wrong witness.

Appellant seems to contend that the lack of consideration grows out of the fact that the new lessee, Frontier Properties, Inc., did not assume the original contract. Such agreement was not the consideration involved herein. The consideration was Hotel Last Frontier Corporation's promise that it would seek to obtain such assumption. That it did so is apparent from its letter of January 7, 1959, to appellant and appellant's reply of February 23, 1959, admitting knowledge of the lease negotiations in which Frontier Properties was engaged "wherein Young Electric Sign Company sign contracts were to be assumed by the lessee. In consideration of the fact that you were willing to help us, we agreed to these reduced monthly payments."

The same grounds of appeal are urged with reference to the court's denial of sundry motions made after judgment. They do not require further discussion.

Affirmed with costs.

McNAMEE and THOMPSON, JJ., concur.