SILVER DOLLAR CLUB, A CORPORATION, APPELLANT, v. THE COSGRIFF NEON COMPANY, INC., A NEVADA CORPORATION, RESPONDENT.

No. 4672

March 4, 1964                    389 P.2d 923

*Springer & Newton,* of Reno, for Appellant.

*A. D. Jensen,* of Reno, for Respondent.

## OPINION

By the Court, McNamee, J.:

Cosgriff sued Silver Dollar on two written contracts, one of which provided for the installation of a canopy at North Virginia Street, Reno, and the other for the installation of a neon display at the same address. The complaint alleges in two counts delinquency in payments under both contracts. The answer in denying any delinquency alleges as an affirmative defense failure of consideration on the part of the plaintiff.

The court in its judgment determined that the plaintiff had fully performed its agreements by constructing the installations according to the terms of the contracts; that by breach of installment payments for such work all of the balance owing became due and payable, and judgment thereupon was entered in favor of the plaintiff in the sum of $39,103.43. Appeal is from said judgment.

Evidence was presented to the effect that although the written contracts provided for a canopy and a neon display in accordance with certain specifications, the sign which was installed was substantially different from that described in the specifications. There is no contention on appeal that the canopy was different.

With respect to the neon contract, the specifications provided for a sign reading, "HARLEY'S SILVER

DOLLAR," in 24 and 12 inch letters. Instead a sign reading, "SILVER DOLLAR CLUB," was installed. Several payments thereafter were made and then further payments were refused. It is contended that the court erred in admitting over the objection of Silver Dollar parol evidence to show a new oral contract or to show oral modifications of the written contract. It would seem that the error assigned is not so much with respect to admitting the parol evidence as it is to the failure of the court to rule on the objection thereto. By allowing the oral evidence to remain in the record the lower court impliedly overruled the objection.

The evidence discloses that after the contracts were executed Vince Harley, President of the Silver Dollar Club, told respondent's sales representative that he couldn't use the name, "HARLEY'S," in the sign, and he requested changes to be made in the sign and canopy.[1] The changes which were then made, including the deletion of the word, "HARLEY'S," were approved by Vince Harley, and the neon sign, as finally constructed, was in accordance with the approved changes. The receipt of payments on the contracts after the installation corroborates the oral testimony that a new contract had been made or that the written contracts had been modified. Cosgriff at all times after the installation faithfully maintained and repaired the sign and canopy.

Parol evidence is proper to show subsequent oral agreements to rescind or modify a written contract. Young Electric Sign Co. v. Last Frontier Corp., 78 Nev. 457, 375 P.2d 859; Holland v. Crummer Corporation, 78 Nev. 1, 368 P.2d 63; 2 Nichols, Applied Evidence § 72, at 1265; 2 Jones on Evidence § 475, at 912 (5th ed. 1958).

Appellant maintains that the terms of the contracts themselves prevented subsequent oral modification thereof. Each contract contained the following provision:

---

[1]Vince Harley requested the change in order to prevent legal action by Harrah's Club, which establishment was in the adjoining building.

"TERMINATION OR MODIFICATION OF AGREE-MENT: This agreement may be terminated or modified and/or the User released from liability hereunder only by the written endorsement of the Owner. No employee, or other agent of the Owner has authority to vary or waive the provisions of this Contract in any respect whatsoever."

This provision obviously is for the benefit of Cosgriff only and, therefore, could be waived by it. In any event, if a written agreement can be modified by a subsequent oral agreement any of its provisions likewise may be modified.

"Parties may change, add to, and totally control what they did in the past. They are wholly unable by any contractual action in the present, to limit or control what they may wish to do contractually in the future. Even where they include in the written contract an express provision that it can only be modified or discharged by a subsequent agreement in writing, nevertheless their later oral agreement to modify or discharge their written contract is both provable and effective to do so." Simpson on Contracts § 63, at 228.

The evidence supports the court's determination that the original contracts were modified and, as modified, performed by Cosgriff.

Appellant, as user, agreed to pay respondent, as owner, $306.07 per month for 60 months under the neon contract and $386.74 per month for 60 months under the canopy contract. Each contract provided that in the event of default by the user, the owner could declare the entire balance due and payable in which event the user "agrees to pay such balance upon such contingency." In addition the owner was given the right to take possession of and remove the installation. In the event the user, after the balance of rentals had been declared due and payable, paid the full amount of the rentals, he was entitled to the use of the displays "under all the terms and provisions" of the contracts for the balance of the term of each contract.

Under the neon contract the user could purchase the display any time before installation without penalty for $8,264. After installation, "2/3ds of the amount paid in will be applied towards the cash selling price for the first year, after that time, conversion may be made on a prorated basis." The canopy contract contained a similar provision, except that the purchase price therefor was $10,442. Appellant contends that the judgment for the entire balance owing under the two contracts is in the nature of a penalty rather than liquidated damages for breach, because it so greatly exceeds the amount which would have been the cost of the two displays prior to installation. If appellant had introduced evidence showing that the actual damages were considerably smaller than the amount stipulated, this could be regarded as an indication that the amount named was intended as a penalty, but no such evidence was introduced.

"Certainly, the defendant has the 'burden of proof' (and doubtless this means the burden of first proceeding with evidence and also of finally persuading the judge) of the facts, such as disproportion, ease of estimating damages, or want of intent to pre-estimate, as he may count on to show that the stipulation is for a penalty." McCormick on Damages § 157, at 623 (1935). See also Lu-Mi-Nus Signs v. Jefferson Shoe Stores, Inc., 257 Ill.App. 150; Electrical Products Corporation v. Mosko, 88 Colo. 447, 297 P. 991; Lamson Co. v. Elliott-Taylor-Woolfenden Co., 6 Cir., 25 F.2d 4, 58 A.L.R. 295.

We conclude therefore that judgment was correctly entered for the balance due under each contract.

Affirmed.

BADT, C. J., concurs, and also concurs in the following comments by THOMPSON, J.

THOMPSON, J., concurring:

I concur, but wish to add a comment. The difficult question presented here is whether the contract provision for liquidated damages is enforcible, or invalid as

a penalty. In short, the provision is that, upon the user-lessee's default, the owner-lessor may declare the entire unpaid rental balance due, and the lessee agrees to pay that amount. Here the unpaid balance at the time of default was $39,103.43, the amount for which judgment was entered.

As a general proposition a liquidated damage provision is prima facie valid. The party challenging it must show that its application amounts to a penalty. (Lu-Mi-Nus Signs v. Jefferson Shoe Stores, Inc., 257 Ill. App. 150) or, to put it differently, that the damages stipulated bear no reasonable relationship to the actual loss sustained. In searching the record to ascertain whether the lessee (Silver Dollar Club) has met its burden in this regard, I find nothing of moving significance. The contract before us is in the form of a lease (or bailment) of personal property for 5 years. Title does not pass unless the user-lessee elects to exercise its option to purchase. The owner-lessor must construct and install the display and thereafter maintain and service it. In return the user-lessee is to pay rent every month. Of major significance is the agreed fact that the display was made and installed for the particular needs of the user at a special location. Once designed and put in place the display has little value to the owner-lessor, except for minimal salvage. The right to repossess the sign is usually of no practical worth, for it has no resale potential. Thus in most instances the owner is not able to reduce the loss incurred upon the user's default. The intrinsic worth of the display has evaporated.[1] Though it is true that, upon the user-lessee's default in the payment of rent, the owner may declare the entire unpaid balance due, it is also true that, if such occurs and the lessee pays that balance, the owner's obligation

---

[1]This fact alone places this case apart from land lease cases containing similar clauses for liquidated damages. See, for example, Kothe v. R. C. Taylor Trust, 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382. In those cases the lessor can usually minimize his damage by leasing to another person. If such is done, the lessor's actual damage may not bear a reasonable relationship to the damage stipulated by the lease.

to maintain and service the display for the balance of the term is revived. Thus it is clear that the user's default merely permits the owner to receive full payment immediately. It does not excuse further performance by the owner if the user pays (voluntarily or after litigation) the accelerated amount declared to be due. In such circumstances there cannot be (as the user-lessee contends) a "failure of consideration."

Though it is true in this case that the lessee (theoretically) could have exercised its option to buy the display by paying approximately $17,000, it does not follow from this alone that the judgment for liquidated damages becomes a penalty. The bald fact is that the lessee did not elect to purchase the display, nor did it continue to pay the monthly rental required. Absent proof in the record that the owner's actual loss is substantially less than the amount stipulated by the contract, we may not declare that contract provision unenforcible as a matter of law. The owner, in these circumstances, is entitled to recover the full benefit of the bargain.